Case 1:20-cv-01802-VM   Document 46   Filed 02/25/21   Page 1 of 5



Nina D. Boyajian
BoyajianN@gtlaw.com
310.586.6587

February 25, 2021

**VIA CM/ECF**

Hon. Victor Marrero
United States District Court Judge
Southern District of New York
chambersnysdmarrero@nysd.uscourts.gov

      Re:    Adlife's First Amended Complaint
      Case:  *Adlife Marketing & Communications Co., Inc. v. Gannett Co., Inc., et al.*,
              1:20-cv-01802 (S.D.N.Y)

Dear Judge Marrero:

      We represent Defendant Gannett Co., Inc. ("Gannett") in connection with the above-referenced proceeding. While we understand that motions for sanctions and for attorneys' fees are generally exempt from Your Honor's pre-motion letter requirement (Individual Practices, II.A.1), this situation and the conduct of Plaintiff Adlife Marketing & Communications Co., Inc. ("Adlife") is a sharp departure from the norm. In the interest of expediency, we respectfully request a conference prior to filing a comprehensive motion regarding the conduct described below.

## Preliminary Statement

      As detailed below and in Gannett's Counterclaim (Dkt. 44), Adlife commenced this action on February 28, 2020 *with full knowledge* that the claims it was asserting against Gannett had been released in a previous settlement in another action. When Gannett discovered and disclosed to the Court Adlife's tactics, Adlife filed an amended complaint dropping approximately 99% of the allegedly infringing content precluded by that release. While Adlife was forced (through the Court-appointed mediator) to disclose its deceit in November 2020, it nevertheless did not drop its claims or file an amended complaint until February 12, 2021, after it manufactured additional purported infringements and Gannett filed its Counterclaim. Adlife's sole motivation is transparent: to keep Gannett tied up in a lawsuit long enough to force it to expend significant legal fees in order to leverage an extortionate settlement – or better yet, to require Gannett to disclose in discovery its list of customers so that Adlife can continue to fill its litigation trough with additional defendants. This type of abusive conduct is typical for a party that has been represented by Richard Liebowitz in over 40 litigations.

      Gannett respectfully seeks the Court's assistance in putting a stop to Adlife's abusive litigation conduct by dismissing Adlife's claims with prejudice and entering judgment in favor of

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM

ACTIVE 55427707

Hon. Victor Marrero
February 25, 2021
Page 2

Gannett on its counterclaim, on which Adlife has already defaulted by failing to timely respond.[1] Gannett further respectfully requests, pursuant to Rule 11(c)(3), that the Court order Adlife and its attorneys "to show cause why [its] conduct . . . has not violated Rule 11(b)," or demonstrate why its conduct is not actionable under 28 U.S.C. § 1927 and the Court's inherent powers.

Should the Court decline to dismiss Adlife's claims, grant Gannett's counterclaim, and/or exercise its sanctioning powers, Gannett intends to file a motion for default. However, in light of the pending discovery, before Gannett's motion could be decided, Gannett would be forced to expend substantial resources in responding to Adlife's discovery demands and to disclose information and documents that would only provide fodder for Adlife's litigation-based business model. For that reason, Gannett respectfully and urgently seeks the Court's immediate attention to these matters.

### Background

As Your Honor is aware, on January 22, 2021, Gannett filed a Counterclaim on the basis that Adlife could not maintain its claims for copyright infringement against Gannett because Adlife had fully released all such claims under the terms of a settlement agreement from a prior litigation with Multi-Ad Services Inc. ("Multi-Ad"). *See* Dkt. 44. Adlife's original complaint attached 373 allegedly infringing circulars. *See* Complaint, Dkt. 6, Ex. D. **All but 3** of the 373 circulars predate the December 2018 Multi-Ad settlement agreement that released "all past, present, potential and future claims" arising from images that Multi-Ad licensed. *See* Dkt. No. 44, Ex. 4. In other words, Adlife sued Gannett on nearly 400 circulars **that it knew** were not infringing, fought against disclosing the Multi-Ad settlement agreement for the better part of 2020, and, only when it was forced to turn over the settlement agreement and Gannett filed its Counterclaim did Adlife drop the vast majority of its claims. *See* FAC ¶ 39.[2]

Unfortunately, conduct of this type is customary for Adlife. Indeed, the Honorable Lawrence E. Kahn recently "note[d] Adlife's continued use of an attorney [Richard Liebowitz] who has little respect or knowledge of local procedures, violates court orders, lies under oath, and is continuously sanctioned for frivolous lawsuits." *Adlife Mktg. & Communs. Co. v. Buckingham*

---

[1] In an attempt to avoid default, Adlife may argue that it intentionally did not respond to the Counterclaim because the counterclaims were moot in light of the amended complaint that withdrew the images originating from Multi-Ad. This argument fails for two reasons. First, the Counterclaim seeks declarations far broader than the half-hearted concession Adlife made in withdrawing the vast majority of the allegations. Specifically, Gannett seeks a declaration that (a) that Adlife's current and future claims against Gannett and Gannett's licensees in connection with photographs obtained from Multi-Ad are barred under the terms of its prior settlement agreement; and (b) that Gannett and its affiliates have a contractual right to use any and all photographs obtained from Multi-Ad during the term of the Content License Agreement between Gannett and Multi-Ad. Dkt. 44. Second, Adlife does not get to decide when a claim is moot such that it does not warrant a response – that power lies only with this Court.

[2] Indeed, the massive Exhibit D from the original complaint does not even appear in the FAC. It has been eliminated entirely. What remains from this previous 373-page exhibit is a scant three pages concerning a single photograph (hamburgers) from February 1, 2019. *See* FAC, Ex. I. Adlife has also added four additional images, which it only recently discovered, for a total of five allegedly infringing images. *See* FAC, Ex. G.

*Bros., LLC*, No. 5:19-CV-0796 (LEK/CFH), 2020 WL 4795287, at *10 n.10 (N.D.N.Y. Aug. 18, 2020). Judge Kahn further noted that:

> Adlife is known for being litigious and has been represented by LLF in at least 41 proceedings since 2018. *See MyWebGrocer, Inc. v Adlife Mktg. & Communications Co., Inc.*, 383 F. Supp. 3d 307, 309, 314 (D. Vt. 2019) (where Adlife was accused of "copyright trolling" and seeking to "recover money from persons who may actually owe it little or nothing."). **Several of Adlife's cases were voluntarily dismissed shortly after a court request for registration verification, text/minute order for failure to comply with local laws, or a show cause order for a lack of proper service**. *See, e.g., Adlife Mktg. & Communications Co., Inc. v. Yoder's Meats, Inc.*, No. 20-CV-1313, Dkt. No. 5 (E.D. Pa. June 9, 2020) (where Liebowitz failed to serve a summons); *Adlife Mktg. & Communications Co., Inc. v. Acme Markets, Inc.*, No. 19-CV-7394, Dkt. No. 3 (S.D.N.Y. Aug. 9, 2019) (where the Court filed a notice to submit an AO 121 Copyright Form); *Adlife Mktg. & Communications Co., Inc. v. Wal-Mart.com USA, LLC*, No. 19-CV-3175, Dkt. No. 19 (D. Col. Mar. 6, 2019) (where Liebowitz's notice of settlement continuously failed to comply with local laws); *Adlife Mktg. & Communications Co., Inc. v. Tops Markets, LLC*, No. 18-CV-1102, Dkt. No. 5 (N.D.N.Y. Nov. 11, 2018) (where case was voluntarily dismissed after a list of copyright numbers was mailed to the Register of Copyrights). This is of no surprise, as LLF is known to voluntarily dismiss suits that are subject to dismissal when it is clear they are in "hot water." *Stridiron*, 2019 WL 2569863, at *4; *see also, McDermott v. Monday Monday, LLC*, No. 17-CV-9230, 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018).

*Id*. (emphasis added). As Your Honor is no doubt aware, Mr. Liebowitz, Adlife's lawyer of choice on more than 40 occasions, has been repeatedly sanctioned by this Court and is precluded from practicing in district courts throughout the country. It appears that Adlife's new counsel continues to engage, on Adlife's behalf (and presumably with Adlife's approval), in the same kind of tactics for which Mr. Liebowitz gained notoriety.

## Analysis

Adlife initiated this action for an "improper purpose," including "to harass, cause unnecessary delay, [and] needlessly increase the cost of litigation;" that its "claims, defenses, and other legal contentions are [not] warranted by existing law;" and that its "factual contentions [lack] evidentiary support." Fed. R. Civ. P. 11(b). Adlife entered into a settlement agreement that released all future claims against Gannett based on images Gannett licensed from Multi-Ad; refused to turn over that agreement until required to do so; and when Gannett brought Adlife's conduct to the Court's attention, Adlife threw up its hands and walked away from claims that it had pursued for *over a year*. Gannett respectfully requests, pursuant to Rule 11(c)(3), that the Court order Adlife "to show cause why [it] has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). *See S.E.C. v. Smith*, 798 F. Supp. 2d 412, 420-21 (N.D.N.Y. 2011) ("[U]nder Rule 11(c)(3), a court *sua sponte* may

initiate sanctions proceedings, for which no 'safe harbor' is afforded but which requires a finding of subjective bad faith.").[3]

In addition to Rule 11, the Court is also authorized under Section 1927 of the United States Code to sanction any attorney " . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . " 28 U.S.C. § 1927. The imposition of sanctions under § 1927 requires a showing that (1) the attorney's actions were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," and (2) the attorney acted in bad faith. *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125-26 (2d Cir. 2011) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009)).

Moreover, courts also possess the "inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (internal quotation marks and citation omitted). Sanctions may be considered under this authority when a party or attorney acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis, and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted, citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d at 323)).

Adlife's conduct in knowingly filing a frivolous complaint and forcing Gannett to litigate against those claims for a year warrants the imposition of sanctions not only pursuant to Rule 11 but also as authorized by this Court's statutory and inherent powers.[4] There can be no real question

---

[3] Because Adlife itself withdrew the sanctionable pleading, Gannett is foreclosed from proceeding pursuant to Rule 11(c)(2), which allows a safe harbor period in which the offending party may withdraw the pleading at issue, and instead appeals to the Court to exercise its discretion pursuant to Rule 11(c)(3).

[4] While Adlife will likely contend that no sanctions should be issued because its frivolous complaint is no longer the operative complaint, such a position is disingenuous. The fact that Adlife decided to file an amended complaint withdrawing its meritless claims after its wrongful conduct was exposed does not change that it and its attorneys knowingly violated their obligations under Rule 11(b). Nor does withdrawal preclude sanctions against Adlife. *See* Fed. R. Civ. P. 11(c) (court may impose "an appropriate sanction on any attorney, law firm, or party that violated the rule," including "an order to pay a penalty into court" or "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses"); *see also Miller v. Bahakel Communs., Ltd.*, Civil Action No. 20-cv-0791-WJM-KMT, 2021 U.S. Dist. LEXIS 31026 (D. Colo. Feb. 19, 2021) (granting defendant's motion for sanctions against Richard Liebowitz *after* the offending complaint was voluntarily dismissed).

Moreover, courts acknowledge that in the analogous situation in which a plaintiff voluntarily dismisses its claims before an adverse ruling, the defendant may be deemed the "prevailing party" under the Copyright Act's attorney's fees provision. *See, e.g., Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc.*, 1997 WL 129399, at *2 (S.D.N.Y. Mar. 20, 1997) ("It is well established, however, that a defendant in an action voluntarily dismissed may be a prevailing party under the Copyright Act."); *see also Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989) ("Withdrawal of [a] claim in effect [makes] the defendants the prevailing parties on that issue."). Accordingly, Gannett reserves its rights to seek attorney's fees and costs pursuant to Section 505 of the Copyright Act.

Hon. Victor Marrero
February 25, 2021
Page 5

that Adlife commenced and continued this action in bad faith knowing that its claims were barred by the Multi-Ad Settlement Agreement while forcing Gannett to expend resources in defending those meritless claims — all in the hope of extracting an upfront settlement payment. Sanctions pursuant to the Court's inherent authority are proper where a party uses the judicial forum for improper purposes or abuses the judicial process. *Chambers*, 501 U.S. at 43. That is exactly what Adlife has done here.

Notably, "[t]he court's inherent sanction power is broader than its power to impose sanctions under either Rule 11 or 28 U.S.C. § 1927." *Carousel Foods of Am., Inc. v. Abrams & Co., Inc.*, 423 F. Supp. 2d 119, 124 (S.D.N.Y. 2006). Whereas courts are statutorily authorized to sanction attorneys, courts may sanction an attorney, a party, or both pursuant to its inherent power. *Id.* (citing *Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l, Inc.*, 2005 WL 2036033, *4 (S.D.N.Y. Aug. 23, 2005) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). This is not a request that we make lightly, but the exercise of the Court's discretion under Rule 11 and its inherent authority to sanction both Adlife and its counsel is warranted under the abusive circumstances evident in this case.

We thank the Court for its attention to this matter and would welcome a conference at Your Honor's convenience.

Respectfully submitted,

GREENBERG TAURIG, LLP

*/s/  Nina D. Boyajian*
Nina D. Boyajian

/ndb

cc:   Ryan Carreon (via ECF/e-mail) (rcarreon@higbeeassociates.com)
      Michael J. Grygiel (via ECF/e-mail) (grygielm@gtlaw.com)
      Zachary C. Kleinsasser (via ECF/e-mail) (kleinsasserz@gtlaw.com)