## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADLIFE MARKETING & COMMUNICATIONS CO. INC., ) ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:20-cv-1802-VM |
| GANNETT CO., INC.; and DOES 1 through 100 inclusive, ) ) | |
| Defendants. ) | |
| GANNETT CO., INC., ) ) | |
| Counterclaimant, ) | |
| v. ) | |
| ADLIFE MARKETING & COMMUNICATIONS CO. INC., ) ) | |
| Counterdefendant ) | |

## <u>AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM</u>

Defendant/Counterclaimant Gannett Co., Inc. ("Gannett"), by its attorneys, Greenberg Traurig, LLP, hereby submits this Amended Answer to the First Amended Complaint ("FAC") filed by Plaintiff/Counterdefendant Adlife Marketing & Communications Co. Inc. ("Adlife").

## <u>JURISDICTION AND VENUE</u>

1.      This paragraph contains introductory statements and legal conclusions to which no response is required. To the extent a response is required, Gannett denies the allegations.

2.      This paragraph states legal conclusions to which no response is required. To the extent a response is required, Gannett denies the allegations.

3.      This paragraph states legal conclusions to which no response is required. To the extent a response is required, Gannett denies the allegations.

4.      This paragraph states legal conclusions to which no response is required. To the extent a response is required, Gannett denies the allegations.

## PARTIES

5.      Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

6.      Gannett admits the allegations in this paragraph, except denies that it is a corporate entity organized under the laws of the State of Virginia.

7.      Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

## STATEMENT OF FACTS

### *Adlife and the Photographs Forming the Subject Matter of This FAC*

8.      Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

9.      Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

10.      Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

11.      Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

*ACTIVE 55623858v2*

12.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

### *Defendant Gannett Co. Inc.*

13.     Gannett admits the allegations in this paragraph.

14.     Gannett admits that it publishes the USA TODAY newspaper and hundreds of other daily newspapers. Gannett denies all remaining allegations in this paragraph.

15.     Gannett admits that it designs print advertising circulars for grocery store chains across the country. Gannett denies all remaining allegations in this paragraph.

16.     Gannett admits that the print advertising circulars it designs for grocery store chains across the country include images of food with accompanying name and pricing information, and that those circulars are distributed to households to promote the food products available at grocery stores. Gannett denies all remaining allegations in this paragraph.

17.     Gannett states that the article referenced in this paragraph speaks for itself, and Gannett lacks knowledge or information sufficient to form a belief as to the truth of the statements in the referenced article.

### *Adlife's Distribution of its Copyrighted Food Photographs*

18.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

19.     Gannett states that the agreement referenced in this paragraph speaks for itself, and Gannett lacks knowledge or information sufficient to form a belief as to the agreement.

20.     Gannett states that the agreement referenced in this paragraph speaks for itself, and Gannett lacks knowledge or information sufficient to form a belief as to the agreement.

*ACTIVE 55623858v2*

21.     Gannett states that the agreement referenced in this paragraph speaks for itself, and Gannett lacks knowledge or information sufficient to form a belief as to the agreement.

22.     Gannett states that the agreement referenced in this paragraph speaks for itself, and Gannett lacks knowledge or information sufficient to form a belief as to the agreement.

23.     Gannett admits that Gannett Supply Corporation, Inc. entered into a Content License Agreement with Multi-Ad Services, Inc. on or about April 1, 2011 and that the Content License Agreement speaks for itself. Gannett denies all remaining allegations in this paragraph.

24.     Gannett admits the exhibit referenced herein is a copy of the April 1, 2011 Content License Agreement between Gannett Supply Corporation, Inc. and Multi-Ad Services, Inc. Gannett denies all remaining allegations in this paragraph.

25.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

26.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

27.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

28.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

29.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

30.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

31.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

32.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

33.     Gannett admits the allegations in this paragraph.

### Adlife's Litigation with Multi-Ad

34.     Gannett admits that Adlife filed suit against Multi-Ad in Illinois federal court in September 2017 and that the complaint filed therein speaks for itself. Gannett denies all remaining allegations in this paragraph.

35.     Gannett states that the letter referenced in this paragraph speaks for itself, and Gannett lacks knowledge or information sufficient to form a belief as to the letter.

36.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

37.     Gannett admits that Adlife and Multi-Ad entered into a settlement and release of the Multi-Ad litigation. Gannett denies all remaining allegations of this paragraph.

38.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

39.     This paragraph states legal conclusions and related commentary to which no response is required.  To the extent a response is required, Gannett denies the allegations.

### Gannett's Alleged Infringing Conduct

40.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

*ACTIVE 55623858v2*

41.     Gannett admits that Adlife filed lawsuits against Fareway and Quality Foods. Gannett lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

42.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

43.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

44.     Gannett admits that Quality Foods filed a third party complaint against Gannett. Gannett lacks information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

45.     Gannett admits that Adlife, Quality Foods, and Gannett entered into a settlement agreement dated July 31, 2019.  Gannett lacks information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

46.     Gannett states that the agreement referenced in this paragraph speaks for itself.

47.     Gannett denies the allegations in this paragraph.

48.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

49.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

50.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

51.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

*ACTIVE 55623858v2*

52.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

53.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

54.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

55.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

56.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

57.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

58.     Gannett denies the allegations in this paragraph.

59.     Gannett denies the allegations in this paragraph.

60.     This paragraph contains legal conclusions and related commentary to which no response is required. To the extent a response is required, Gannett denies the allegations.

### FIRST CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 101 *et seq.*

61.     Gannett incorporates by reference its responses to paragraphs 1-60 as if fully set forth herein.

62.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

*ACTIVE 55623858v2*

63.     Gannett lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

64.     Gannett denies the allegations in this paragraph.

65.     Gannett denies the allegations in this paragraph.

66.     Gannett denies the allegations in this paragraph.

67.     Gannett denies the allegations in this paragraph.

68.     Gannett denies the allegations in this paragraph.

69.     This paragraph contains a statement of relief and legal conclusions to which no response is required. To the extent a response is required, Gannett denies the allegations.

70.     Gannett denies the allegations in this paragraph.

71.     Gannett denies the allegations in this paragraph.

72.     Gannett denies the allegations in this paragraph.

## PRAYER FOR RELIEF

The remaining paragraphs set forth the statement of relief to which no response is required.  Gannett denies that Adlife is entitled to any of the requested relief and denies any allegations contained in these paragraphs to which a response is required. Gannett denies that Adlife is entitled to any relief whatsoever of any kind against Gannett as a result of any act of Gannett or any person or entity on behalf of Gannett.

## DEMAND FOR JURY TRIAL

Gannett acknowledges Adlife's demand for a jury trial, but denies that any issues are triable by jury.

## AFFIRMATIVE DEFENSES

Gannett alleges the following affirmative defenses but recognizes that, depending upon the development of facts, some of the defenses may ultimately not be applicable. By such

8

*ACTIVE 55623858v2*

pleadings Gannett also intends no alteration of the burden of proof and/or burden of production that otherwise exists with respect to any particular issue at law or in equity. Furthermore, all defenses are pled in the alternative, and do not constitute an admission of liability or as to whether Adlife is entitled to any relief whatsoever.

### FIRST DEFENSE
**(Failure to State a Claim)**

The FAC is barred, in whole or in part, because Adlife has failed to state a claim upon which relief may be granted. Among other things, under Gannett's agreement with Multi-Ad Services, Inc. ("Multi-Ad"), Gannett owns a license to use each of the food stock photographs it used in advertisements during the term of its agreement with Multi-Ad. Accordingly, any copyright infringement claim raised by Adlife in connection with a photograph used by Gannett during the term of the Multi-Ad agreement must be dismissed.

### SECOND DEFENSE
**(Claim Preclusion)**

The FAC is barred, in whole or in part, by the doctrine of claim preclusion. Upon information and belief, Adlife filed a copyright infringement lawsuit against Multi-Ad arising out of the same core of operative facts as the allegations at issue in this case. Adlife settled with Multi-Ad and, as part of that settlement, ███████████████████████████ ███████████████████████████████████████████████ ████████████████████████ and dismissed the lawsuit against Multi-Ad with prejudice. Because the lawsuit ended in a final judgment on the merits and the parties in this case are identical and/or in privity with the parties in that lawsuit, Adlife's claims here are barred.

9

### THIRD DEFENSE
### (Estoppel)

The FAC is barred, in whole or in part, by the doctrine of estoppel. Upon information and belief, Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. During that time, Adlife litigated against and settled with Multi-Ad and, as part of that settlement, ████████████████████████████ ████████████████████████████████████ ████████████████████████████ and dismissed the lawsuit against Multi-Ad with prejudice. Even after filing its Complaint, Adlife unreasonably, improperly, and inexcusably delayed service of the Complaint. Gannett relied on Adlife's acts and omissions to its detriment because, among other things, Gannett could have taken steps to address and/or mitigate any possible infringement (which Gannett denies) by Gannett or third parties.

### FOURTH DEFENSE
### (Express License)

The FAC is barred, in whole or in part, because, at all relevant times, Gannett had a valid, express license to publish the complained-of photographs. Pursuant to its license agreement with Multi-Ad, Gannett enjoyed a bargained-for license to use some or all of the photographs identified in the FAC, and Gannett's use of the photographs was within the scope of its license.

### FIFTH DEFENSE
### (Implied License)

The FAC is barred, in whole or in part, by the doctrine of implied license. Pursuant to its license agreement with Multi-Ad, Gannett enjoyed the right to use some or all of the photographs identified in the FAC, and Gannett's use of the photographs was within the scope of its license. Further, upon information and belief, Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. During that time, Adlife

10

litigated against and settled with Multi-Ad and, as part of that settlement, █████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ and dismissed the lawsuit against Multi-Ad with prejudice. Even after filing its Complaint, Adlife unreasonably, improperly, and inexcusably delayed service of the Complaint. Gannett relied on Adlife's acts and omissions to its detriment because, among other things, Gannett could have taken steps to address and/or mitigate any possible infringement (which Gannett denies) by Gannett or third parties.

## SIXTH DEFENSE
### (Acquiescence)

The FAC is barred, in whole or in part, by the doctrine of acquiescence. Upon information and belief, Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. During that time, Adlife litigated against and settled with Multi-Ad and, as part of that settlement, ████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ and dismissed the lawsuit against Multi-Ad with prejudice. Even after filing its Complaint, Adlife unreasonably, inexcusably, and improperly delayed service of the Complaint. Gannett has suffered prejudice as a result of Adlife's conduct because, among other things, Gannett could have taken steps to address and/or mitigate any possible infringement (which Gannett denies) by Gannett or third parties.

*ACTIVE 55623858v2*

**SEVENTH DEFENSE**
**(Laches)**

The FAC is barred, in whole or in part, by the doctrine of laches. Upon information and belief, Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. During that time, Adlife litigated against and settled with Multi-Ad and, as part of that settlement, ███████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ and dismissed the lawsuit against Multi-Ad with prejudice. Even after filing its Complaint, Adlife unreasonably, inexcusably, and improperly delayed service of the Complaint. Gannett has suffered prejudice as a result of Adlife's conduct because, among other things, Gannett could have taken steps to address and/or mitigate any possible infringement (which Gannett denies) by Gannett or third parties.

**EIGHTH DEFENSE**
**(Waiver)**

The FAC is barred, in whole or in part, by the doctrine of waiver. Upon information and belief, Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. During that time, Adlife litigated against and settled with Multi-Ad and, as part of that settlement, ███████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ and dismissed the lawsuit against Multi-Ad with prejudice. Even after filing its Complaint, Adlife unreasonably, inexcusably, and improperly delayed service of the Complaint. Accordingly, to the extent Adlife owned the rights it asserts in the Complaint, Adlife intentionally relinquished those rights. Gannett has suffered prejudice as a result of Adlife's conduct because, among other things, Gannett could have taken steps to

12

address and/or mitigate any possible infringement (which Gannett denies) by Gannett or third parties.

## NINTH DEFENSE
### (Copyright Misuse)

The FAC is barred, in whole or in part, by the doctrine of copyright misuse. First, Adlife commenced this action *with full knowledge* that the copyright infringement claims it was asserting against Gannett had been released. When Gannett obtained the Multi-Ad settlement agreement and filed its Counterclaim, Adlife dropped approximately 99% of the allegedly infringing content precluded by the release. Second, upon information and belief, Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. During that time, Adlife litigated against and settled with Multi-Ad and, as part of that settlement, █████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████ and dismissed the lawsuit against Multi-Ad with prejudice. Even after filing its Complaint, Adlife unreasonably, inexcusably, and improperly delayed service of the Complaint. Having already obtained relief in connection with its claims, Adlife's lawsuit against Gannett violates the public policy underlying copyright law. Finally, the photographs for which Adlife claims copyright protection lack the requisite originality and creativity, as they depict common American dishes and foods as they appear in advertisements and circulars across the country every day. Adlife's offensive use of unoriginal works to obtain a monetary recovery violates the public policy embodied in a grant of a copyright. Gannett has suffered prejudice as a result of Adlife's misuse of its alleged copyrights because, among other things, Gannett could have taken steps to address and/or mitigate any possible infringement (which Gannett denies) by Gannett or third parties.

**TENTH DEFENSE**
**(Failure to Mitigate Damages)**

Adlife has failed to exercise reasonable care and diligence to mitigate its alleged claims and damages and, therefore, Adlife is barred from any and all recovery sought herein against Gannett. Upon information and belief, Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. Yet Adlife unreasonably, improperly, and inexcusably delayed asserting claims against Gannett (at the same time Adlife was asserting and settling claims against Multi-Ad, Quality Foods, Inc., Gannett, and other parties arising out of the same core of operative facts). Even after filing its Complaint, Adlife unreasonably, inexcusably, and improperly delayed service of the Complaint.

**ELEVENTH DEFENSE**
**(Innocent Infringement)**

The FAC is barred, in whole or in part, by the doctrine of innocent infringement. Among other things, under Gannett's agreement with Multi-Ad, Gannett has owned (and still owns) a license to use each of the food stock photographs it used in advertisements during the term of its agreement with Multi-Ad. Accordingly, Gannett at all relevant times had reasonable grounds for its actions and did, in fact, act in good faith and in a commercially reasonable manner. Gannett no reason to believe that its acts could possibly constitute infringement (which they do not).



*ACTIVE 55623858v2*

## THIRTEENTH DEFENSE
### (Lack of Requisite Originality and/or Creativity)

The FAC is barred, in whole or in part, to the extent Adlife claims or asserts rights to elements of the works allegedly infringed that, among other things, do not contain or encompass the requisite level of creativity to be the proper subject of a valid, enforceable copyright. The photographs identified in the FAC depict common American dishes and foods as they appear in advertisements and circulars across the country each day. They lack any artistic quality, and the neither the nature nor the content of the photographs suggest that any creative spark was required to produce them.

## FOURTEENTH DEFENSE
### (Invalid Copyright)

The FAC is barred, in whole or in part, because Adlife's copyright is invalid. Among other things, the works allegedly infringed do not contain or encompass the requisite level of creativity to be the proper subject of a valid, enforceable copyright. The photographs identified in the FAC depict common American dishes and foods as they appear in advertisements and circulars across the country each day. They lack any artistic quality, and neither the nature nor the content of the photographs suggest that any creative spark was required to produce them. Accordingly, the registered works contain insufficient copyrightable subject matter. Further, certain of the registrations identified in the FAC issued more than five years after the first publication of the works purportedly covered by the registrations.

## FIFTEENTH DEFENSE
### (*Scenes a Faire*)

The FAC is barred, in whole or in part, under the scenes a faire doctrine. The photographs identified in the FAC depict common American dishes and foods as they appear in

advertisements and circulars across the country each day. The elements in the photographs follow naturally from the theme of the photographs, rather than from an author's creativity.

## SIXTEENTH DEFENSE
### (*De Minimis* Use)

The FAC is barred, in whole or in part, under the doctrine of *de minimis* use because, to the extent Adlife can plead and prove copyright infringement—which Adlife cannot—any alleged use of the protectable portions of the works allegedly infringed has been *de minimis*. The photographs identified in the FAC depict common American dishes and foods as they appear in advertisements and circulars across the country each day. They lack any artistic quality, and the neither the nature nor the content of the photographs suggest that any creative spark was required to produce them. To the extent the photographs contain the requisite originality (which Gannett denies) that Gannett used, any such use was *de minimus*.

## SEVENTEENTH DEFENSE
### (Adlife's Own Conduct)

Damages or injuries, if any, suffered by Adlife are attributable to Adlife's own conduct, deeds, words, acts and/or omissions, and not to any conduct, deeds, acts, words, or omissions of Gannett. Among other things, under Gannett's agreement with Multi-Ad, Gannett owns a license to use each of the food stock photographs it used in advertisements during the term of its agreement with Multi-Ad. Further, Adlife inexcusably delayed in asserting its alleged rights, and, upon information and belief, ███████████████████████████████████████████████ ████████████████████████████████████ Finally, in the event Adlife is found to have sustained any damages, then Gannett is only liable or responsible for that portion of damages which corresponds to the degree of its own responsibility and not for the acts or omissions of Adlife.

16

**EIGHTEENTH DEFENSE**
**(Acts of Third Parties)**

Damages or injuries, if any, suffered by Adlife are attributable to the conduct, deeds, words, acts and/or omissions of third parties, and not to any conduct, deeds, acts, words, or omissions of Gannett. Among other things, Multi-Ad granted Gannett a license to use each of the food stock photographs it used in advertisements during the term of its agreement with Multi-Ad after the expiration or termination of the Multi-Ad agreement. To the extent Adlife has a claim for copyright infringement, it is against Multi-Ad or another third party, not Gannett. Finally, in the event Adlife is found to have sustained any damages, then Gannett is only liable or responsible for that portion of damages which corresponds to the degree of its own responsibility and not for the acts or omissions of third parties, whether named or unnamed in the FAC.

**NINETEENTH DEFENSE**
**(Unjust Enrichment)**

The FAC is barred, in whole or in part, because Adlife seeks excessive damages from Gannett which would result in unjust enrichment. Among other things, upon information  and belief, ████████████████████████████████████████████████████████ ████████████████████████████████ and dismissed with prejudice one or more lawsuits arising out of the same core of operative facts. Any recovery in Adlife's favor would constitute an improper windfall to Adlife at Gannett's expense.

**TWENTIETH DEFENSE**
**(No Damage)**

Adlife has suffered no damage as the result of any alleged act, omission, or breach by Gannett as alleged in the FAC. Among other things, upon information and belief, ████████ ████████████████████████████████████████████████████████████████ ███████████████████

Gannett reserves the right to amend its Amended Answer to the FAC and to assert such additional defenses as may later become available or apparent.

**WHEREFORE**, the Gannett Co., Inc., respectfully requests judgment dismissing the FAC in its entirety and with prejudice, and granting Gannett the costs and disbursements of this action, including, without limitation, its attorney's fees, together with such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

Defendant/Counterclaimant Gannett Co., Inc. ("Gannett") hereby brings this Counterclaim for declaratory relief pursuant to 28 U.S.C. § 2201 against Plaintiff/Counterdefendant Adlife Marketing & Communications Co. Inc. ("Adlife"), and alleges as follows:

## INTRODUCTION

1.      Adlife's meritless claims in this case are no more than a thinly-veiled attempt at extortion. Adlife cannot maintain any of its claims for copyright infringement against Gannett because Adlife has ███████████████████████████████ from prior litigation. Gannett brings this counterclaim for a judicial declaration that, under the terms of this settlement agreement, Adlife's current and future claims against Gannett and Gannett's licensees are barred.

2.      Adlife's claims are independently barred because Gannett and its affiliates had a right to use the images at issue in this case under the terms of its Content License Agreement with Adlife's former business partner, Multi-Ad Services Inc., a successor to Multi-Ad Inc. ("Multi-Ad"). Accordingly, Gannett also seeks a judicial declaration that, under the terms of that

Content License Agreement, Adlife's claims are barred and Gannett and its affiliates' use of the photographs at issue is permissible.

## PARTIES

3.      Upon information and belief Adlife is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island. Adlife is a marketing company that owns photographs of basic food and grocery items.

4.      Gannett is a Delaware corporation headquartered in McLean, Virginia.  Gannett is an industry-leading publisher of community and national newspapers. Gannett also designs advertising circulars for grocery stores.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

6.      This Court has personal jurisdiction over Adlife because Adlife directed its wrongful conduct towards Gannett in the state of New York and has wrongfully injured Gannett in New York. Adlife further filed suit against Gannett in this jurisdiction.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims for relief stated in this Counterclaim occurred in this District and because Adlife is subject to personal jurisdiction in this District or may be found in this District.

## FACTUAL BACKGROUND

### *Adlife's License and Distribution Agreement with Multi-Ad*

8.      In 1994, Adlife and Multi-Ad entered into a Digital Food Photography Distribution Agreement whereby Adlife granted to Multi-Ad a worldwide license to market and distribute

19

Adlife's photographs of food, including the Photographs at issue in this litigation. Attached hereto as **Exhibit 1** is a true and correct copy of the Digital Food Photography Distribution Agreement.

9.       In 2011, Multi-Ad and Gannett entered into a Content License Agreement. Under the terms of the Content License Agreement, Multi-Ad granted Gannett a license to use Adlife's food photographs.   Attached hereto as **Exhibit 2** is a true and correct copy of the Content License Agreement.

10.       The Content License Agreement provides that Gannett and its affiliates may use any Adlife photographs that were incorporated in an advertisement during the term of the Content License Agreement after the termination of the Content License Agreement. Ex. 2, ¶7.3. This provision allowing the re-use of photographs in perpetuity was important to Gannett because Gannett and its grocery store chain clients often run the same ads again and again with little alteration.

11.       In November 2016, Adlife terminated its Digital Food Photography Distribution Agreement with Multi-Ad. Adlife asserts in this lawsuit that, beginning in December 2016, Adlife and Multi-Ad began instructing Multi-Ad's customers, including Gannett, to cease using Adlife's photographs by March 1, 2017. Compl. ¶¶23-26.

### *Adlife Sues Multi-Ad*

12.       In September 2017, Adlife filed a lawsuit against Multi-Ad in Illinois federal court. *See Adlife Mktg. & Commc'ns Co., Inc. v. Multi-Ad Solutions, LLC, et al.*, Civil Action No. 17-01418 (C.D. Ill) (filed Sept. 14, 2017) (the "Multi-Ad Lawsuit"). Adlife alleged that Multi-Ad breached its contract with Adlife with respect to photographs available for licensing to Multi-Ad customers. Attached hereto as **Exhibit 3** is a true and correct copy of the Multi-Ad Lawsuit Complaint.

13.     In December 2018, Adlife and Multi-Ad entered into a settlement agreement (the "Multi-Ad Settlement Agreement"). Attached hereto as **Exhibit 4** is a true and correct copy of the Multi-Ad Settlement Agreement. Under the terms of the Multi-Ad Settlement Agreement, Adlife ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ *See* Ex. 4 at ¶3. A stipulation of dismissal with prejudice was filed in the Multi-Ad Lawsuit on December 27, 2018.

14.     Because Multi-Ad had granted Gannett a license under the Content License Agreement, Gannett was Multi-Ad's licensee. *See, e.g.*, Ex. 2 at ¶2. Accordingly, by way of the Multi-Ad Settlement Agreement, Adlife ████████████████████████████████ ████████████████████████████████████████ *See id.*; Ex. 4 at ¶3.

15.     Neither Adlife nor Multi-Ad disclosed the terms of the December 2018 settlement to Gannett. Until Adlife begrudgingly produced a copy of the Multi-Ad Settlement Agreement during mediation in this case, Gannett did not know that Adlife had ████████████ ████████████████████████████████████████████████████████████ ████████████

### *Adlife's Extortionate Claims Against Gannett in the Instant Lawsuit*

16.     After Adlife parted ways with Multi-Ad, Adlife went into competition with its former partner, Multi-Ad, and began soliciting Multi-Ad's former customers, including Gannett. Adlife took the position that no one could use its photographs without paying Adlife directly, and threatened copyright infringement suits if Multi-Ad's former customers did not retain Adlife.

Upon information and belief, Adlife has sued or threatened to sue numerous of Multi-Ad's former customers—and those customers' clients—since early 2017.

17.    In late 2019, Adlife began threatening to sue Gannett. In response, Gannett requested a copy of the Multi-Ad Settlement Agreement in an effort to understand the nature and scope of the release provided in that agreement, including to licensees of Multi-Ad, such as Gannett. Adlife refused to provide the Multi-Ad Settlement Agreement and, instead, filed this lawsuit.

18.    Despite additional requests from Gannett after the filing of the Complaint, Adlife continued to resist production of the Multi-Ad Settlement Agreement until October 16, 2020, when the Court-appointed mediator in this case recommended that Adlife produce the agreement.

19.    When Adlife finally turned over the Multi-Ad Settlement Agreement, the reasons for Adlife's resistance were immediately clear: *under the terms of the Multi-Ad Settlement Agreement, Adlife* ███████████████████████████. The Multi-Ad Settlement Agreement explicitly provides that Gannett, as Multi-Ad's licensee, is ██████ ██████████████████████████████████████████████████████████ ████████████████  *See* Ex. 4 at ¶3. In other words, Adlife's Claims against Gannett are expressly barred.

20.    Given the plain terms of the Multi-Ad Settlement Agreement—which Adlife kept hidden from Gannett for nearly two years—it is clear that Adlife has been making intentionally false threats of copyright infringement against Gannett since late 2019. Adlife has no copyright infringement claims against Gannett because Adlife has ████████████ It is also clear that this lawsuit was knowingly filed in bad faith. If Adlife had turned over a copy of the Multi-Ad

22

Settlement Agreement as Gannett requested, Adlife's deceit would have been exposed, and neither this Court nor Gannett would be burdened by Adlife's frivolous lawsuit. It is obvious that Adlife's goal from the beginning has been to extort a settlement payment from Gannett before Gannett could obtain a copy of the Multi-Ad Settlement Agreement.

### *Adlife's Bad Faith Acceptance of Payment from Gannett in the Quality Foods Lawsuit*

21.　　Not only does the Multi-Ad Settlement Agreement reveal Adlife's dishonest conduct in this lawsuit, but it also reveals that Adlife knowingly and unlawfully accepted a settlement payment from Gannett in a *separate* lawsuit concerning food photographs—without ever informing Gannett that Gannett had, in fact, been █████████████████████████ ██████████████████████████

22.　　By way of background, in August 2018, Adlife filed a lawsuit in the District of South Carolina against Quality Foods of Anderson, S.C., Inc. ("Quality Foods"), a supermarket in South Carolina. *See Adlife Marketing & Commc'ns Co. Inc. v. Quality Foods of Anderson, S.C., Inc.*, *et al*, No. 8:18-cv-01976-TMC (D.S.C.) (the "Quality Foods Lawsuit"). Adlife alleged that Quality Foods used 20 of Adlife's food photographs in weekly advertisements without permission and, therefore, infringed Adlife's copyrights with respect to those photographs.

23.　　In September 2018, Quality Foods asserted a Third-Party Complaint against Gannett and Mainstreet Newspapers, Inc. ("Mainstreet"), alleging that Gannett and Mainstreet had developed and designed the advertisements at issue in the Quality Foods Lawsuit, and that Gannett and Mainstreet had selected the allegedly infringing photographs.

24.　　On July 29, 2019, Adlife, Quality Foods, Gannett, and Mainstreet entered into a settlement agreement (the "Quality Foods Settlement Agreement"). Attached hereto as **Exhibit 5** is a true and correct copy of the Quality Foods Settlement Agreement. Even though Adlife had

23

entered into the Multi-Ad Settlement Agreement seven months earlier in December 2018—
███████████████████████████████████████████████—Adlife
never disclosed the existence of the Multi-Ad Settlement Agreement to Gannett when the parties
executed the Quality Food Settlement Agreement in July 2019. Under the terms of the Quality
Foods Settlement Agreement, Quality Foods, Gannett, and Mainstreet agreed to pay Adlife
██████ "in full and complete settlement of all claims between them related to the Photographs
and any other photographs published in Quality [Foods] advertisements prior to or as of the
Effective Date of this Agreement." *See* Ex. 5 at ¶7.  "Photographs" is defined in the Quality
Foods Settlement Agreement as "the photographs at issue in the litigation set forth in the copy of
the Complaint attached hereto as Exhibit A." *See* Ex. 5 at ¶1.2.

25.     As Gannett now knows, at the time the Quality Foods Settlement Agreement was
signed, Adlife had ████████████████████████████████████████████
██████. Incredibly, Adlife kept that information secret, and accepted a settlement payment
from Gannett.

### *Gannett Has a Contractual Right to Use the Photographs*

26.     In addition to the bar against Adlife's claims under the terms of the Multi-Ad
Settlement Agreement, Adlife's claims are independently barred because Gannett had a
contractual right to use the Photographs at issue in this litigation.

27.     Gannett and Multi-Ad entered into the Content License Agreement on April 1,
2011, whereby Multi-Ad granted Gannett and its Affiliates (as defined by the Content License
Agreement) a license to access Multi-Ad's food photographs and to use those photographs in
producing and distributing advertisements. *See* Ex. 2 at ¶2.

28.     Section 7.3 of the Content License Agreement provides as follows:

> After the termination of this Agreement, Gannett and its Affiliates may continue to reproduce, display, create derivative works from, or distribute any Licensed Material, which was incorporated into any advertisement created by Gannett or its Affiliates during the Term, in connection with producing and distributing advertisements in any Products and Service.

Ex. 2 at ¶7.3.

29.     Under the terms of the Content License Agreement, Gannett has a contractual right to use the Photographs, even after the Content License Agreement's termination. Gannett incorporated the Photographs at issue in this case into advertisements during the Term of the Content License Agreement. Accordingly, Gannett and its Affiliates' use of the Photographs was permissible, and Adlife's claims are barred.

### At All Times, Adlife Has Known Its Claims Are Barred

30.     At all times, Adlife has known that its claims in this Action were barred. Adlife has been aware of the Content License Agreement as demonstrated by the Complaint's reference to the Content License Agreement. (Dkt. No. 6.) Even though the Content License Agreement explicitly provides that Gannett is permitted to continue to "reproduce, display, create derivate works from or distribute" any Licensed Material (as defined therein) which was incorporated into any advertisement created by Gannett or its affiliates during the Content License Agreement's term, Adlife still filed its meritless Complaint asserting dozens of claims relating to images that Gannett or its affiliates had incorporated into advertisements during the Content License Agreement's term.

31.     Further, at all times, Adlife has known that the Multi-Ad Settlement Agreement, to which it is a party, ███████████████████████████████████████ ██████████████████████████████████████████████████ Despite

this knowledge, Adlife still filed its meritless Complaint and asserted dozens of baseless claims which it knew had been released, as evidenced by its dramatically scaled back FAC (Dkt. No. 6).

<u>**COUNT I**</u>
**(Declaratory Judgment Under 28 U.S.C. §§ 2201, 2202)**

32.     Gannett incorporates the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

33.     An actual case and controversy exists between Gannett and Adlife as to whether Adlife's current claims against Gannett and any future claims against Gannett's licensees are barred under the terms of a prior settlement agreement to which Adlife is a party.

34.     Gannett has sustained damages as a result of Adlife's extortionate claims in this case and Adlife's extortionate conduct in the Quality Foods Lawsuit.

35.     Accordingly, Gannett seeks a declaration from this Court that Adlife's copyright claims against Gannett and any future copyright claims against Gannett's licensees based on photographs obtained from Multi-Ad are barred under the terms of the prior settlement agreement.

<u>**COUNT II**</u>
**(Declaratory Judgment Under 28 U.S.C. §§ 2201, 2202)**

36.     Gannett incorporates the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

37.     An actual case and controversy exists between Gannett and Adlife as to whether Gannett and Gannett's affiliates have a contractual right to use photographs obtained from Multi-Ad during the term of the Gannett's Content License Agreement with Multi-Ad, including the Photographs at issue in this litigation, pursuant to the Content License Agreement.

26

38.     Gannett has sustained damages as a result of Adlife's extortionate claims in this case and Adlife's extortionate conduct in the Quality Foods Lawsuit.

39.     Accordingly, Gannett seeks a declaration from this Court that its use of photographs obtained from Multi-Ad during the term of the Gannett's Content License Agreement with Multi-Ad, including the Photographs at issue in this litigation, was permissible under the Content License Agreement; that its affiliates' use of photographs obtained from Multi-Ad during the term of the Gannett's Content License Agreement with Multi-Ad, including the Photographs at issue in this litigation, was permissible under the Content License Agreement; and that Adlife's claims and potential claims are barred.

## PRAYER FOR RELIEF

WHEREFORE, Gannett prays for the following relief:

(1)     As to Count I, enter judgment in favor of Gannett declaring that Adlife's current and future claims against Gannett and Gannett's licensees in connection with photographs obtained from Multi-Ad are barred under the terms of its prior settlement agreement;

(2)     As to Count II, enter judgment in favor of Gannett declaring that Gannett and its affiliates have a contractual right to use any and all photographs obtained from Multi-Ad during the term of the Content License Agreement between Gannett and Multi-Ad, including the Photographs at issue in this litigation;

(3)     Grant such other and further relief that the Court deems reasonable and just, including an award for damages, attorneys' fees, and costs.

*ACTIVE 55623858v2*

Dated: March 3, 2020

Respectfully submitted,

**GREENBERG TRAURIG, LLP**


*/s/  Nina D. Boyajian*
Nina D. Boyajian
(admitted *pro hac vice*)
1840 Century Park East Suite 1900
Los Angeles, California 90067
Tel: 310-586-7700; Fax: 310-586-7701
Email: boyajiann@gtlaw.com

Michael J. Grygiel
54 State Street, 6th Floor
Albany, New York 12207
Tel: 518-689-1400; Fax: 518- 689-1499
Email: grygielm@gtlaw.com

Zachary C. Kleinsasser
(admitted *pro hac vice*)
One International Place, Suite 2000
Boston, Massachusetts 02110
Tel: 617-310-6000; Fax: 617-310-6001
Email: kleinsasserz@gtlaw.com

*Attorneys for Defendant Gannett Co., Inc.*

28