**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADLIFE MARKETING & COMMUNICATIONS CO. INC.<br><br>     Plaintiff,<br><br>vs.<br><br>GANNETT CO., INC.; and DOES 1 through 100 inclusive,<br><br>     Defendant. | Case No. 1:20-cv-1802-VM-KNF |
| GANNETT CO., INC.;<br><br>     Counter-claimant,<br><br>vs.<br><br>ADLIFE MARKETING & COMMUNICATIONS CO. INC.,<br><br>     Counter-defendant. | |

**OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM**
**AND TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................ 3

    A.    Adlife's Complaint.................................................................................................3

    B.    Adlife Has Released the Claims Asserted Against Gannett in This
        Lawsuit.................................................................................................................4

          1.    The Multi-Ad and Fareway Lawsuits. ...................................................... 4
          2.    The Multi-Ad Settlement Agreement. ...................................................... 5

    C.    Prior to This Lawsuit, Adlife Violated Its Covenant Not to Sue Under the
        Multi-Ad Settlement Agreement...........................................................................6

    D.    Adlife Refused to Produce the Multi-Ad Lawsuit Settlement Agreement
        for Months.............................................................................................................7

    E.    Gannett's Counterclaim. .......................................................................................8

II.    ARGUMENT ................................................................................................................ 10

    A.    Legal Standards...................................................................................................10

          1.    Adlife Has Not Met The Standard For Its Motion to Dismiss................. 10
          2.    Adlife Has Not Met The Standard For Its Motion to Strike. ................... 10

    B.    Gannett's First Claim for Declaratory Judgment Is Sufficiently Pled.................11
    C.    Gannett's Affirmative Defenses Are Adequately Pled.........................................13

          1.    Adlife's Inability to Demonstrate Prejudice Is Fatal to Its Motion
              to Strike................................................................................................... 15
          2.    Gannett's Second Affirmative Defense for Claim Preclusion and
              Eighth Affirmative Defense for Waiver. ................................................. 17
          3.    Gannett's Third Affirmative Defense for Estoppel. ................................ 17
           4.    Gannett's Sixth Affirmative Defense of Acquiescence and Seventh
              Affirmative Defense for Laches................................................................ 18
          5.    Ninth Affirmative Defense for Copyright Misuse. .................................. 19
          6.    Gannett's Affirmative Defenses Related to Adlife's Damages. .............. 20
          7.    Sixteenth Affirmative Defense for *De Minimis* Use................................ 20

    CONCLUSION.............................................................................................................. 20

*ACTIVE56396249*

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Adlife Mktg. & Communs. Co., Inc. v. Buckingham Bros., LLC*,
No. 519CV0796LEKCFH, 2020 WL 4795287 (N.D.N.Y. Aug. 18, 2020) .............................1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................10

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
350 F.3d 640 (7th Cir. 2003) ....................................................................................................19

*B.W.P. Distribs., Inc. v. OE Plus, Ltd.*,
No. 07 CV9588 (KMK), 2009 WL 1154102 (S.D.N.Y. Mar. 31, 2009)..................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................10

*Calabrese v. CSC Holdings, Inc.*,
No. CV 02-5171(DLI)(JO), 2006 WL 544394 (E.D.N.Y. Mar. 6, 2006)................................15

*Carb v. Lincoln Ben. Life Co., Inc.*,
No. 09CIV2980RMBKNF, 2009 WL 3049785 (S.D.N.Y. Sept. 22, 2009)..............................12

*Clean Crawl, Inc. v. Crawl Space Cleaning Pros., Inc.*,
No. C17-1340 BHS, 2019 WL 5722221 (W.D. Wash. Nov. 5, 2019) .....................................18

*County Vanlines Inc. v. Experian Info. Solutions, Inc.*,
205 F.R.D. 148 (S.D.N.Y. 2002) ..............................................................................................15

*Fahmy v. Jay-Z*,
No. 207CV05715CASPJWX, 2014 WL 12558782 (C.D. Cal. July 21, 2014) .......................18

*Figueroa v. RSquared NY, Inc.*,
No. 14–CV–4390 ADS ARL, 2015 WL 3936256 (E.D.N.Y. June 26, 2015)..................14, 15

*Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc.*, 1997 WL 129399, at *2
(S.D.N.Y. Mar. 20, 1997) ...........................................................................................................9

*Lasercomb Am. Inc., v. Reynolds*,
911 F.2d 970 (4th Cir. 1990) ....................................................................................................19

*Loubier v. Allstate Ins. Co.*,
No. 309CV261JBA, 2010 WL 1279082 (D. Conn. Mar. 30, 2010)........................................15

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
345 F. Supp. 3d 482 (S.D.N.Y. 2018).......................................................................................19

*Mutual Pharm. Co. v. Watson Pharm., Inc.*,
No. CIV.A. 09–5421 (GEB), 2010 WL 446132 (D. N.J. Feb. 8, 2010) ..................................16

*MyWebGrocer, Inc. v Adlife Mktg. & Communications Co., Inc.*,
383 F. Supp. 3d 307 (D. Vt. 2019)..............................................................................................1

ii

*New London Assocs., LLC v. Kinetic Soc. LLC*,
    No. 18CV7963 (DLC), 2019 WL 2918163 (S.D.N.Y. July 8, 2019) .....................................11

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)...............................................................................................................18

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
    460 F. Supp. 3d 481 (S.D.N.Y. 2020)..............................................................................11, 12

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n.*,
    121 F.3d 516 (9th Cir. 1997) .................................................................................................19

*Raymond Weil, S.A. v. Theron*,
    585 F. Supp. 2d 473 (S.D.N.Y. 2008)...................................................................................14

*Resolution Trust Corp. v. Gregor*,
    No. 94 CV 2578, 1995 WL 931093 (E.D.N.Y. Sept. 29, 1995) ............................................15

*Salcer v. Envicon Equities Corp.*,
    744 F.2d 935 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986)....................14

*Serby v. First Alert, Inc.*,
    934 F. Supp. 2d 506 (E.D.N.Y. 2013) ..................................................................................15

*Setzler v. City & County of San Francisco*,
    No. C 07-05792 SI, 2008 WL 2264481 (N.D. Cal. June 2, 2008)..........................................16

*Tardif v. City of New York*,
    302 F.R.D. 31 (S.D.N.Y. 2014) ............................................................................................14

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
    No. 18-CV-5075 (LJL), 2020 WL 3472597 (S.D.N.Y. June 25, 2020) ..................................11

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989)........................9

**Federal Statutes**

28 U.S.C. § 1332 ......................................................................................................................12

*ACTIVE56396249*

## INTRODUCTION

Plaintiff and Counter-Defendant Adlife Marketing & Communications Co. Inc. ("Adlife") initiated its baseless lawsuit in February 2020 *with full knowledge* that the claims it was asserting against Defendant and Counter-plaintiff Gannett Co., Inc. ("Gannett") had been released in a previous settlement in another action.  When Gannett discovered and disclosed Adlife's tactics to the Court, Adlife filed an amended complaint dropping approximately 99% of the allegedly infringing content precluded by that release.  While Adlife was asked (through the Court-appointed mediator) to disclose its deception in November 2020, it nevertheless did not drop its claims or file an amended complaint until February 12, 2021, after (1) it manufactured additional purported infringements; and (2) Gannett filed its Counterclaim seeking relief based on Adlife's dropping its released claims.  Adlife's sole motivation is transparent: to keep Gannett tied up in a lawsuit long enough to force it to expend significant legal fees in order to leverage an extortionate settlement – or better yet, to require Gannett to disclose in discovery its list of customers so that Adlife can continue to fill its litigation trough with additional defendants.[1] Now, faced with Gannett's Counterclaim, which seeks to hold Adlife accountable for its improper tactics and extortionary conduct, Adlife has filed a meritless Motion to Dismiss Gannett's First Counterclaim and to Strike Certain Affirmative Defenses ("Motion"), seeking dismissal of Gannett's claim for a judicial declaration that Adlife's claims in this litigation are barred, and to strike the majority of Gannett's affirmative defenses.  The Motion lacks support in fact and in law, and should be denied in its entirety.

---

[1] Such tactics are nothing new for Adlife, which is "known for being litigious." *Adlife Mktg. & Communs. Co., Inc. v. Buckingham Bros., LLC*, No. 519CV0796LEKCFH, 2020 WL 4795287, at *10 n.10 (N.D.N.Y. Aug. 18, 2020); *see, e.g.*, *MyWebGrocer, Inc. v Adlife Mktg. & Communications Co., Inc*., 383 F. Supp. 3d 307, 309, 314 (D. Vt. 2019) (where Adlife was accused of "copyright trolling" and seeking to "recover money from persons who may actually owe it little or nothing").

First, Adlife contends that Count I of Gannett's Counterclaim, which seeks a declaration that Adlife's claims are barred based on a prior settlement agreement, fails because "the scope of Adlife's infringement claims as alleged in the FAC only involves infringements which would never have been covered by the [prior] settlement agreement in the first place."  Mot. at 5. Adlife asserts that the prior settlement agreement "is only applicable through December 18, 2018 . . . [t]hus, any infringement claims arising after the effective date . . . would not be released[.]" *Id*.  And it argues that because it "voluntarily narrowed the scope of its claim to instances of infringement occurring after December 18, 2018 . . . there can be no actual case or controversy between Adlife and Gannett arising out of the [prior] release of claims." *Id*.  But the settlement agreement at issue, on its face, is not limited as Adlife contends. To the contrary, the agreement expressly defines "Claims" as ███████████████████████████████████ ████████████████████ (emphasis added) Dkt. No. 53, Ex. 4 (Multi-Ad Settlement Agreement), p. 1.  And in the agreement, ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ (emphasis added) *Id*. ¶ 3. Adlife therefore released ████████████████████████████ including the ones it now asserts against Gannett.  Because Adlife misconstrues (and misrepresents) the basic terms of the settlement agreement at issue, its request for dismissal should be denied.

Second, Adlife seeks to improperly and prematurely eliminate the majority of Gannett's meritorious defenses to its baseless claims.  Mot. at 7-21.  However, as set forth below, Adlife's Motion fails for several reasons, including that it has not met the high standard as to any one defense, and has not demonstrated that it would be prejudiced by the inclusion of any defense as required.

2

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  Adlife's Complaint.

Adlife filed its Complaint on February 28, 2020, and served Gannett on June 17, 2020. Dkt. Nos. 1, 13.  In the Complaint, Adlife asserted a single cause of action for copyright infringement, claiming that Gannett willfully infringed Adlife's copyrights in 21 photographs (the "Photographs") used in advertising circulars for an Iowa-based grocery store chain, Fareway Stores Inc. ("Fareway").  Dkt. No. 6 ¶¶ 30-32.  Adlife claimed that it licensed photographs of food, including the Photographs at issue in this litigation, to Multi-Ad Inc. ("Multi-Ad") under a Digital Food Distribution Agreement, *id.* ¶ 18, and that Multi-Ad, in turn, licensed that content to Gannett in 2011 under a Content License Agreement, *id.* ¶ 21.  Adlife alleged that it terminated its agreement with Multi-Ad in November 2016, and that as a result of that termination all of Multi-Ad's subscribers, including Gannett, were instructed to cease using Adlife's content by March 1, 2017.  *Id.* ¶¶ 23-25.  Adlife contended that in April 2017, it discovered the Photographs being used in circulars for Fareway, and that Fareway informed Adlife that those circulars were designed by Gannett and obtained through Gannett's license with Multi-Ad.  *Id.* ¶¶ 30-31. Adlife's Complaint attached 447 pages of advertising circulars which it contended were the subject of its claim for infringement.  Dkt. No. 6, Ex. D.

Gannett answered the Complaint in July 2020, denying liability for copyright infringement and maintaining that its use of the Photographs was authorized and/or a non-infringing use, as the Photographs lack the requisite originality, and because Gannett has an express and/or implied license to use each of the Photographs.  Dkt. No. 21.  Gannett further asserted a number of affirmative defenses, including that Adlife's claims were barred by the doctrines of release and claim preclusion.  *Id.* at 7.

3

On November 13, 2020, Adlife and Gannett participated in mediation with the Court-appointed mediator.  In advance of the mediation, Adlife was finally forced to produce the prior settlement agreements that Gannett had requested for months, confirming what Gannett had suspected all along: Adlife's claims in this case are barred by the prior settlement agreement between Adlife and Multi-Ad.

### B. Adlife Has Released the Claims Asserted Against Gannett in This Lawsuit.

### 1. The Multi-Ad and Fareway Lawsuits.

As is now clear, this is the *third* lawsuit Adlife has brought related to its claims in this case. Adlife has *already* sued Multi-Ad, as well as Fareway.  *See* Request for Judicial Notice ("RJN"), *Adlife Mktg. & Commc'ns Co., Inc. v. Multi-Ad Solutions, LLC, et al.*, No. 17-01418 (C.D. Ill.) (filed Sept. 14, 2017) (the "Multi-Ad Lawsuit"); RJN, *Adlife Mktg. & Commc'ns Co., Inc. v. Fareway Stores, Inc.*, sNo. 17-04254 (C.D. Ill.) (filed Sept. 6, 2017) (the "Fareway Lawsuit"). In the Fareway Lawsuit, Adlife alleged copyright infringement of the *identical* Photographs identified in Adlife's Complaint against Gannett.  *See* RJN, Ex. A (Fareway Lawsuit Complaint). And in the Multi-Ad Lawsuit, Adlife alleged that Multi-Ad breached its contract with Adlife with respect to photographs available for licensing to Multi-Ad clients.  *See* RJN, Ex. B (Multi-Ad Lawsuit Complaint).  Because both of those lawsuits were dismissed with prejudice, *see* RJN, Ex. C (Multi-Ad Lawsuit dismissal); RJN, Ex. D (Fareway Lawsuit dismissal), Adlife's claim for copyright infringement against Gannett is barred by the doctrine of claim preclusion. More importantly, Adlife's claims are explicitly barred by its release in the Multi-Ad Lawsuit. *See* Dkt. 53, Ex. 4 (Multi-Ad Settlement Agreement).

## 2. The Multi-Ad Settlement Agreement.

As set forth in the Multi-Ad Settlement Agreement, Adlife ████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████ *Id.* at 1. Accordingly, the Multi-Ad Settlement

Agreement contains broad release language, clearly covering the claims asserted here:



*Id.* ¶ 3 (emphasis added). In this case, Adlife's Complaint specifically alleges that

Gannett was a licensee of Multi-Ad, and that the Photographs were "obtained by Gannett as part

of its Content License Agreement with Multi-Ad." Dkt. No. 6 ¶ 31. As a Multi-Ad licensee,

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████

Further demonstrating Adlife's bad faith in bringing this lawsuit, the Settlement

Agreement ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

*ACTIVE56396249*



*See* Dkt. 53, Ex. 4 (Multi-Ad Settlement Agreement) ¶ 4 (emphasis added). Thus, under the Settlement Agreement, Adlife ████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id*. ¶¶ 3-4. The Multi-Ad Settlement Agreement was executed on December 21, 2018. *Id.* at 9-10.

### C. Prior to This Lawsuit, Adlife Violated Its Covenant Not to Sue Under the Multi-Ad Settlement Agreement.

On August 19, 2018, Adlife filed a lawsuit in the District of South Carolina against Quality Foods of Anderson, S.C., Inc. ("Quality Foods"), a supermarket in South Carolina. *See* RJN, *Adlife Mktg. & Commc'ns Co. Inc. v. Quality Foods of Anderson, S.C., Inc.*, *et al*, No. 8:18-cv-01976-TMC (D. S.C.) (filed July 19, 2018) (the "Quality Foods Lawsuit"). There, Adlife alleged that Quality Foods used twenty of Adlife's food photographs in weekly advertisements. RJN, Ex. E (Quality Foods Lawsuit Complaint) ¶¶ 10-11. Quality Foods, in turn, denied Adlife's claims and asserted a Third Party Complaint against Gannett, alleging that Gannett developed and designed the advertisements at issue, and that it had selected the photographs used therein. RJN, Ex. F (Quality Foods Lawsuit Third-Party Complaint) ¶¶ 33-36.

As set forth above, ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ *See* Dkt. 53,

Ex. 4 (Multi-Ad Settlement Agreement) ¶¶ 3-4. But Adlife did not do as it had promised.

6

Instead, it allowed the Quality Foods Lawsuit to proceed against Gannett until July 2019 when Adlife, Quality Foods, and Gannett entered into a Confidential Settlement and Release Agreement, whereby Gannett paid Adlife ███ to settle its claims — ███████████████

████████████████████████████████████████████████████

███    *See* Dkt. 53, Ex. 5 (Quality Foods Settlement Agreement) ¶ 7. In addition to sums paid in settlement, Gannett also incurred substantial legal fees in the Quality Foods Lawsuit.

### D. Adlife Refused to Produce the Multi-Ad Lawsuit Settlement Agreement for Months.

Before Adlife even filed the lawsuit in this case, Gannett suspected that Adlife had released all potential claims against it related to the Photographs pursuant to the Multi-Ad Settlement Agreement and/or Quality Foods Settlement Agreement.  For that reason, as early as February 2020, Gannett requested Adlife to produce those agreements, to allow Gannett to determine to what extent (if any) Gannett may have liability.  Adlife refused.  Gannett raised the issue with the Court on August 14, 2020, and Judge Marrero acknowledged that Adlife's production of the agreements could assist the parties in resolving this case.  Accordingly, Judge Marrero instructed the parties to engage in limited discovery that might aid in settlement negotiations, and Gannett again requested that Adlife produce the agreements.  For the next six weeks, Adlife continued to refuse to produce the agreements.[2]  It was not until Gannett requested the Court-appointed mediator's assistance that Adlife finally produced the two agreements on

---

[2]    Adlife insisted that Gannett engage in extensive, timely, and costly discovery before it would agree to produce the Multi-Ad and Quality Foods Settlement Agreements — even though the substance of the settlement agreements created a potential threshold barrier to any liability on the part of Gannett in this case. Even after the Mediator recommended that Adlife produce the settlement agreements, Adlife again demanded information from Gannett before it would do so, which Gannett ultimately agreed to provide so that it could obtain the settlement agreements. It is apparent that Adlife, knowing the contents of the settlement agreements, was simply trying to obtain as much information as it could from Gannett to fuel its litigation business model, i.e., by using Gannett to find its next defendant to threaten/extort.

October 16, 2020.  At every turn, Adlife resisted production of those agreements, presumably because it knew the Multi-Ad Settlement Agreement points to just one conclusion: Adlife's claims here are barred, and this lawsuit is nothing short of attempted extortion.

### E.  Gannett's Counterclaim.

Once Adlife's deception was exposed and it became clear that Adlife's claims in this case were barred, Gannett filed its Amended Answer and Counterclaim on January 22, 2021.  Dkt. No. 44.  Gannett asserts two causes of action seeking declaratory judgment.  *Id.* ¶¶ 30-37.  The first claim "seeks a declaration from this Court that Adlife's copyright claims against Gannett and any future copyright claims against Gannett's licensees based on photographs obtained from Multi-Ad are barred under the terms of the prior settlement agreement."  *Id.* ¶ 33.  The second claim, which is not at issue in Adlife's Motion, seeks a declaration that (i) Gannett's use of photographs obtained from Multi-Ad during the term of the Gannett's Content License Agreement with Multi-Ad, including the Photographs at issue in this litigation, was permissible under the Content License Agreement; (ii) that its affiliates' use of photographs obtained from Multi-Ad during the term of the Gannett's Content License Agreement with Multi-Ad, including the Photographs at issue in this litigation, was permissible under the Content License Agreement; and (iii) that Adlife's claims and potential claims are barred.  *Id.* ¶ 37.

Adlife's Motion claims that it filed its First Amended Complaint ("FAC") on February 12, 2021 "in an effort to simplify the issues presented in the litigation."  Mot. at 4; Dkt. No. 54. The amended allegations make clear that Adlife's FAC is not motivated by some alleged desire to "simplify" the issues in this case.  Rather, it is clear the FAC was amended because, once the truth of the prior settlements came to light, Adlife realized it could no longer maintain the vast majority of its baseless and extortionary claims.  That Adlife's Complaint was motivated solely

8

by an improper purpose is illustrated by the fact that *just three of the 447 Fareway circulars* attached to the Complaint remain at issue in the FAC.  *Compare* Dkt. 6, Ex. D. *to* Dkt. 45, Ex. I. Adlife further claims in the FAC that it identified six additional purported infringements based on Quality Foods circulars.   Dkt. No. 45, Ex. G.   None of these "additional" purported infringements were identified in the Complaint, further suggesting that their sudden discovery by Adlife is nothing more than a desperate attempt to prop up its nearly gutted former Complaint.[3]

As discussed above, in the Multi-Ad Settlement Agreement, Adlife released all "Claims"

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Dkt. 53, Ex. 4 (Multi-Ad Settlement Agreement) at 1.   Thus, even though Adlife has dismissed the vast majority of its baseless claims related to the Fareway circulars predating the "effective date" of the Multi-Ad Settlement Agreement, Adlife's claims relating to the remaining Fareway circulars identified in the FAC are likewise barred because ████████████████████████████████as Adlife suggests, and it has released the claims it asserts here.  Accordingly, on March 5, 2021, Gannett filed its Amended Answer to the FAC and Counterclaim.   Dkt. 53.   As with its original Counterclaim, Gannett's Counterclaim in response to the FAC asserts two causes of action for declaratory relief, and the first counterclaim "seeks a declaration from this Court that Adlife's copyright claims against Gannett and any future copyright claims against Gannett's licensees

---

[3]   Gannett is the prevailing party as to Adlife's voluntarily-dismissed claims and reserves all rights to seek attorneys' under the Copyright Act.  *See, e.g., Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc.*, 1997 WL 129399, at \*2 (S.D.N.Y. Mar. 20, 1997) ("It is well established, however, that a defendant in an action voluntarily dismissed may be a prevailing party under the Copyright Act."); *see also Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989) ("Withdrawal of [a] claim in effect [makes] the defendants the prevailing parties on that issue.").   Accordingly, Gannett reserves its rights to seek attorney's fees and costs pursuant to Section 505 of the Copyright Act.

*ACTIVE56396249*

based on photographs obtained from Multi-Ad are barred under the terms of the prior settlement agreement." *Id.* ¶¶ 32-39.

Gannett's Amended Answer to the FAC asserts a number of affirmative defenses, many of which relate to Adlife's bad-faith conduct described herein, the Multi-Ad Settlement Agreement, and other viable defenses Gannett has properly asserted in response to Adlife's baseless claims.[4]  Dkt. No. 53 at 8-17.

## II.   ARGUMENT

### A. Legal Standards.

#### 1.   Adlife Has Not Met The Standard For Its Motion to Dismiss.

Adlife's Motion to Dismiss must be denied if Gannett's Counterclaim "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-57 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Gannett's detailed Counterclaim, containing 31 paragraphs of factual allegations and supported by five exhibits, easily meets these requirements.  Adlife's Motion must therefore be denied.

#### 2.  Adlife Has Not Met The Standard For Its Motion to Strike.

Courts in this District have made clear that pleading affirmative defenses is "context-specific" and that affirmative defenses need not be plead with the same degree of factual detail as a complaint.  As Judge Cote recently explained: "Unlike a complaint, an answer is not a pleading

---

[4]   After Gannett filed its initial answer to Adlife's Complaint, Adlife also threatened a motion to strike. Gannett met and conferred in good faith and agreed to withdraw some of its affirmative defenses, which Gannett did not replead when it filed its amended answer.

to which a response is required. . . .  Moreover, without the benefit of discovery, the facts needed to plead certain affirmative defenses may not be readily known to the defendant, a circumstance warranting a relaxed application of the plausibility standard."  *New London Assocs., LLC v. Kinetic Soc. LLC*, No. 18CV7963 (DLC), 2019 WL 2918163, at *1-2 (S.D.N.Y. July 8, 2019) (internal quotations omitted) ("Viewed within the context of this litigation, each of the affirmative defenses that Spectrum seeks to assert are plausibly pleaded.  NLA cannot reasonably argue that it lacks a sufficient factual basis to understand the nature of Spectrum's proposed affirmative defenses.  Further, NLA has not adequately explained how it would be prejudiced by the addition of these affirmative defenses at this stage of the litigation."); *see also Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *5 (S.D.N.Y. June 25, 2020) ("Courts have recognized the inherent imprecision involved in the assertion of affirmative defenses, such that the cautious pleader is fully justified in setting up as affirmative defenses anything that might possibly fall into that category, even though that approach may lead to pleading matters as affirmative defenses that could have been set forth in simple denials.") (internal alterations and quotations omitted).

Gannett's affirmative defenses more than adequately satisfy the pleading standard, are clearly related to Adlife's claims, and Adlife has not demonstrated any prejudice from the affirmative defenses, which should stand.

## B.  Gannett's First Claim for Declaratory Judgment Is Sufficiently Pled.

"A declaratory judgment claim may be brought where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue or will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 500 (S.D.N.Y. 2020) (internal

11

quotation and citation omitted).  The Declaratory Judgment Act sets forth just "two prerequisites to the issuance of declaratory relief: (i) appropriate federal jurisdiction and the (ii) the existence of an actual case or controversy." *Carb v. Lincoln Ben. Life Co., Inc.*, No. 09CIV2980RMBKNF, 2009 WL 3049785, at *5 (S.D.N.Y. Sept. 22, 2009) (denying motion to dismiss declaratory judgment claim where both factors pled).  Gannett's first counterclaim plausibly alleges both elements.

First, Gannett sufficiently pleads subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Dkt. No. 53 ¶ 5. Second, the existence of an actual case or controversy is clear: Adlife contends that its claims are not barred by the terms of the Multi-Ad Settlement Agreement, and Gannett contends that Adlife's claims have been fully released.  *See id.* ¶¶ 19-20.  There is a fundamental dispute between the parties as to the impact of the Multi-Ad Settlement Agreement on this case, and a declaratory judgment will clarify the legal relationship between Adlife and Gannett. *Pilkington*, 460 F. Supp. 3d at 500.

Adlife contends that Gannett's claim should be dismissed because "there can be no actual case or controversy between Adlife and Gannett arising out of the release of claims as embodied in Adlife's settlement agreement with Multi-Ad because the scope of Adlife's infringement claim as alleged in the FAC only involves infringements which would have never been covered in by the Multi-Ad settlement agreement in the first place."  Mot. at 5.  But the plain terms of the Multi-Ad Settlement Agreement demonstrate that Adlife is simply wrong.  In the Multi-Ad Settlement Agreement, Adlife █████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

12

████████████████████████████████████████████████████████ *See* Dkt. 53, Ex. 4

(Multi-Ad Settlement Agreement), ¶ 3. "Claims" is defined in the Agreement ██████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ *Id.* at 1.  Thus, Adlife's claims in this case, which

were or could have been brought in the Multi-Ad Lawsuit, are barred.  Adlife offers no

explanation whatsoever to address these basic terms of the Multi-Ad Settlement Agreement.

Instead, it simply ignores them.

Further, Adlife's throwaway standing argument as to Gannett's customers, Mot. at 5-6,

likewise does not support dismissal, for several reasons.  First, once again, Adlife's argument

ignores the plain terms of the Multi-Ad Settlement Agreement, ██████████████████████

██████████████████████████████████ *See* Dkt. 53, Ex. 4 (Multi-Ad

Settlement Agreement), ¶ 3.  Second, Adlife's argument regarding Gannett's customers in no

way negates the fact that an actual controversy exists between Adlife and Gannett over whether

Adlife's claims in this case are barred by the prior Multi-Ad Settlement Agreement.

Adlife offers no legal or factual basis to warrant dismissal of Gannett's first counterclaim,

and Gannett has more than met the pleading standard applicable to maintain its claims.

### C.  Gannett's Affirmative Defenses Are Adequately Pled.

Adlife's Motion to Strike certain of Gannett's affirmative defenses is similarly meritless.

Adlife seeks to dismiss the majority of Gannett's affirmative defenses because they "are either

not proper affirmative defenses, or not applicable to Adlife's claim for copyright infringement."

Mot. at 7.  As discussed below, Adlife is wrong.

13

It is well recognized that "[m]otions to strike affirmative defenses are generally disfavored." *Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y. 2014).  The "Second Circuit . . . has warned that courts should exercise this discretion with caution:

> A motion to strike an affirmative defense under Rule 12(f), Fed.R.Civ.P., for legal insufficiency is not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proven in support of the defense. Moreover, even when the facts are not disputed, several courts have noted that a motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law. This is particularly so when, as here, there has been no significant discovery."

*Salcer v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015, 1015 (1986); *see also Tardif,* 302 F.R.D. at 32–34 ("The standard to prevail on a motion to strike an affirmative defense is demanding.").  "[T]o prevail on a motion to strike: (1) there may be no question of fact which might allow the defense to succeed; (2) there may be no substantial question of law, a resolution of which could allow the defense to succeed; and (3) the moving party must show that it is prejudiced by the inclusion of the defense." *Tardif*, 302 F.R.D. at 32.  "The burden to establish each of these elements rests on the party moving to strike the affirmative defenses." *Figueroa v. RSquared NY, Inc.*, No. 14–CV–4390 ADS ARL, 2015 WL 3936256, at *2 (E.D.N.Y. June 26, 2015).  As Chief Judge McMahon has observed, "[t]here is nothing dumber than a motion to strike boilerplate affirmative defenses; it wastes the client's money and the court's time." *Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 490 (S.D.N.Y. 2008).

"When considering the sufficiency of a defense under the first two elements of the analysis, the court must accept the matters well-pleaded as true and should not consider matters outside the pleadings.  The court should construe the pleadings liberally to give the defendant a full opportunity to support its claims at trial, after full discovery has been made." *Figueroa*,

14

2015 WL 3936256, at *2-3 (E.D.N.Y. June 26, 2015); *see also Serby v. First Alert, Inc*., 934 F. Supp. 2d 506, 516 (E.D.N.Y. 2013) (a motion to strike is generally "determinable only after discovery and a hearing on the merits," and "[a] court may therefore strike only those defenses so legally insufficient that it is beyond cavil that defendants could not prevail upon them").

When considering the sufficiency of a defense under the third prong of the analysis, "mere assertions by the moving party that he is prejudiced are insufficient." *Figueroa*, 2015 WL 3936256, at *2-3 (E.D.N.Y. June 26, 2015), quoting *County Vanlines Inc. v. Experian Info. Solutions, Inc.,* 205 F.R.D. 148, 153 (S.D.N.Y. 2002). As with the first two elements, the burden is on the moving party to provide substantive facts to demonstrate prejudice. *Calabrese v. CSC Holdings, Inc.*, No. CV 02-5171(DLI)(JO), 2006 WL 544394, at *4 (E.D.N.Y. Mar. 6, 2006). Here, Adlife has failed to meet the high burden required to strike Gannett's Affirmative Defenses.

### 1.      Adlife's Inability to Demonstrate Prejudice Is Fatal to Its Motion to Strike.

There is no reasonable claim of prejudice to Adlife regarding any of the Affirmative Defenses at issue. The absence of such prejudice is fatal to a motion to strike. *Loubier v. Allstate Ins. Co*., No. 309CV261JBA, 2010 WL 1279082, at *7 (D. Conn. Mar. 30, 2010) ("Having failed to argue or show that prejudice would result from inclusion of the paragraphs it seeks to strike, Allstate's motion will be denied"); *County Vanlines Inc*., 205 F.R.D. at 153; *Resolution Trust Corp. v. Gregor*, No. 94 CV 2578, 1995 WL 931093, at *5 (E.D.N.Y. Sept. 29, 1995); *Figueroa*, 2015 WL 3936256, at *2-3 (E.D.N.Y. June 26, 2015) ("mere assertions by the moving party that he is prejudiced are insufficient").

Here, Adlife offers nothing more than a conclusory statement of prejudice as to the Affirmative Defenses. Adlife offers no specific explanation as to alleged prejudice resulting

15

from any one of the defenses.  Instead, it merely asserts in general terms that "the parties and the Court will be forced to expend significantly more time and resources in litigation."  Mot. at 22. It claims that "striking these defenses will significantly narrow the scope of the case and will allow for more efficient and targeted litigation as to the issue (*sic*) that go to the heart of the merits of this case." *Id.* But these "mere assertions" are insufficient as a matter of law to satisfy Adlife's burden.

First, Adlife's unfounded suggestion that it will be burdened by discovery unless the Affirmative Defenses are stricken is offered without explanation and, at best, is premature. *See, e.g.*, *B.W.P. Distribs., Inc. v. OE Plus, Ltd.,* No. 07 CV9588 (KMK), 2009 WL 1154102, at *11 (S.D.N.Y. Mar. 31, 2009) (denied motion to strike "given the preliminary stage of the proceedings and the general nature of the allegations"); *Setzler v. City & County of San Francisco*, No. C 07-05792 SI, 2008 WL 2264481, at *8 (N.D. Cal. June 2, 2008) ("[T]he Court believes the better approach is to make determinations about the scope of discovery as particular issues arise"); *Mutual Pharm. Co. v. Watson Pharm., Inc.*, No. CIV.A. 09–5421 (GEB), 2010 WL 446132, at *9 (D. N.J. Feb. 8, 2010).

Second, the inclusion of these Affirmative Defenses does not significantly impact the time or magnitude of the anticipated discovery process in this litigation.  The majority of the discovery pertaining to these defenses relates to whether Adlife's claims are barred either by the Multi-Ad Settlement Agreement, Adlife's own conduct, or on other grounds. All of these issues are fairly explored in discovery in any event, whether or not these affirmative defenses are included.  As a result, Adlife cannot meet its burden of proving that it will be prejudiced by the inclusion of the defenses. Rather, Adlife simply seeks to avoid any investigation into its own conduct and prior settlement agreements relating to its claims in this lawsuit.

16

Because Adlife has not demonstrated prejudice as to any defense, its Motion should be denied. Its specific arguments as to the individual defenses are likewise deficient.

### 2. Gannett's Second Affirmative Defense for Claim Preclusion and Eighth Affirmative Defense for Waiver.

Adlife recycles its argument as to Gannett's first counterclaim to assert that Gannett's second affirmative defense for claim preclusion and eighth affirmative defense for waiver should be stricken because Adlife's "claims are neither released nor precluded as they did not exist at the time of Multi-Ad release." Mot. at 8, 12.  But as Gannett has shown, Adlife's contentions regarding the scope of the Multi-Ad Settlement Agreement are contravened by the plain terms of the agreement.  At a minimum, a factual issue exists over whether Adlife's claims were or could have been brought in the Multi-Ad Lawsuit, and a legal issue exists over whether the Multi-Ad Settlement Agreement applies to the claims in this case.  Adlife offers no valid basis for striking these defenses and has not satisfied its burden.

### 3. Gannett's Third Affirmative Defense for Estoppel.

Adlife's contentions regarding Gannett's third affirmative defense for estoppel are likewise baseless. Adlife asserts that the defense fails because Gannett "does not specifically articulate any act which Adlife intended Gannett to rely upon."  Mot. at 8.  But this, again, ignores the plain allegations of Gannett's Counterclaim which, at a minimum, demonstrate the existence of factual issues as to this defense.  For example, Gannett's Counterclaim sets forth detailed factual allegations regarding its reliance on Adlife's bad faith acceptance of payment from Gannett in the Quality Foods Lawsuit.  Dkt. No. 53 ¶¶ 21-25.  Gannett now knows that, at the time of the Quality Foods Settlement Agreement, Adlife ████████████████████████ ████████████████████████████████.  *Id.* ¶ 25.  Adlife's assertion that Gannett has failed to identify facts to support this defense is simply incorrect.

17

### 4. Gannett's Sixth Affirmative Defense of Acquiescence and Seventh Affirmative Defense for Laches.

Adlife contends that Gannett's Sixth Affirmative Defense of Acquiescence and Seventh Affirmative Defense for Laches should be stricken, citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). In *Petrella*, the Supreme Court ruled that laches generally cannot be invoked to preclude adjudication of a claim for damages brought within the 3-year Copyright Act's statute of limitations. But the Court carved out two exceptions to the general rule: first, in "extraordinary circumstances," laches may bar plaintiff's claims, and second, laches may be "brought to bear at the remedial stage in determining the appropriate injunctive relief." *Petrella*, 572 U.S. at 665; *see Fahmy v. Jay-Z*, No. 207CV05715CASPJWX, 2014 WL 12558782, at *2 (C.D. Cal. July 21, 2014) ("the Court also left open the possibility that laches could be invoked in two circumstances"). Here, both defenses may be invoked to bar some or all of Adlife's claims due to both the "extraordinary circumstances" and the "remedial stages" carve-outs. The extraordinary circumstances carve out is a fact issue and, in any event, applies here based on the facts pleaded in Gannett's defenses, as well as other facts that Gannett anticipates will be developed during discovery. The "remedial stages" carve out is also a fact issue, and in any event applies here because the Court must consider Adlife's unjustifiable delay in crafting any equitable relief. *See, e.g.*, *Clean Crawl, Inc. v. Crawl Space Cleaning Pros., Inc.*, No. C17-1340 BHS, 2019 WL 5722221, at *14-15 (W.D. Wash. Nov. 5, 2019) ("the Court may consider a delay in commencing suit (if established) in fashioning appropriate injunctive relief and need not find at this juncture that laches entirely bars CCI's copyright claims").

Further, Adlife's contention that the Multi-Ad Settlement Agreement, ████████ ████████████████████████████████████████████ "would not be evidence of any acquiescence" defies common sense. Mot. at 10. ████████████████

18

███████████████, Adlife has acquiesced to their use.  Again, Adlife has not met its burden.

### 5.  Ninth Affirmative Defense for Copyright Misuse.

As Adlife concedes, Gannett has pled a number of factual bases supporting its ninth affirmative defense for copyright misuse, including that Adlife knew its claims were barred when it filed this lawsuit and that Adlife dropped the vast majority of its claims when it was finally forced to produce the Multi-Ad Settlement Agreement.  Further, Adlife has already obtained relief for its claims, and seeks a double recovery here for claims it has released.  Mot. at 12. Adlife contends that, even if true, Adlife's conduct does not constitute copyright misuse.  Adlife is wrong.

Although the Second Circuit has not directly addressed copyright misuse, several decisions in this District have analyzed copyright misuse as an affirmative defense. *See, e.g.*, *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 510-11 (S.D.N.Y. 2018) (citing cases).  Moreover, contrary to Adlife's representations, Mot. at 13, this Court has analyzed copyright misuse outside of the anti-trust context.  *See id.* (district court cases in Second Circuit "assumed that [copyright misuse] defense could be applied outside of an antitrust context").

Several courts have applied misuse of copyright where the plaintiff used a copyright in a manner that violates the public policy embodied in the grant of a copyright.  *Lasercomb Am. Inc., v. Reynolds,* 911 F.2d 970, 978 (4th Cir. 1990); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n.,* 121 F.3d 516, 521 (9th Cir. 1997); *Assessment Techs. of WI, LLC v. WIREdata, Inc.,* 350 F.3d 640, 647 (7th Cir. 2003) ("for a copyright owner to use an infringement suit to obtain property protection . . . that copyright law clearly does not confer, hoping to force a settlement

19

. . . is an abuse of process").  Accordingly, Gannett's copyright misuse defense, which sets forth specific facts as to Adlife's improper purpose and violations of public policy, is sufficiently pled.

### 6.   Gannett's Affirmative Defenses Related to Adlife's Damages.

Adlife seeks to strike a number of Gannett's affirmative defenses that are relevant to a critical issue in this case — *i.e.*, whether Adlife has suffered any damages (which Gannett denies).  Specifically, Adlife seeks to strike Gannett's Tenth Affirmative Defense for Failure to Mitigate Damages, Eleventh Affirmative Defense for Innocent Infringement, Seventeenth Defense for Adlife's Own Conduct, Eighteenth Affirmative Defense for Acts of Third Parties, Nineteenth Affirmative Defense of Unjust Enrichment, and Twentieth Affirmative Defense for No Damage.  Each of these defenses relates directly to Adlife's claim for damages.  Adlife does not merely seek statutory damages, but requests, among other things, an accounting for "all profits, income, receipts, or other benefit derived by Gannett," "actual damages," and "disgorgement of all profits derived by Gannett." Dkt. No. 45 at 11-12, Prayer for Relief. Mitigation of damages, Adlife's own conduct, acts of third parties, and other of these defenses are plainly applicable to the imposition of any such damages.  Nor is there any prejudice to Adlife if these defenses are included.

### 7.   Sixteenth Affirmative Defense for *De Minimis* Use.

Gannett agrees to withdraw its sixteenth affirmative defense for *de minimis* use.

## CONCLUSION

For the foregoing reasons, Adlife's Motion to Dismiss and Motion to Strike should denied in their entirety.

20

Dated  April 9, 2021                            Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Nina D. Boyajian*
Nina D. Boyajian *(Admitted Pro Hac Vice)*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: 310-586-7700
Email: boyajiann@gtlaw.com

Michael J. Grygiel
54 State Street, 6th Floor
Albany, NY 12207
Tel: 518- 689-1400
Fax: 518-689-1499
Email: grygielm@gtlaw.com

Zachary C. Kleinsasser *(Admitted Pro Hac Vice)*
One International Place, Suite 2000
Boston, MA 02110
Tel: 617-310-6000
Fax: 617- 310-6001
Email: kleinsasserz@gtlaw.com

*Attorneys for Gannett Co., Inc.*

*ACTIVE56396249*