Exhibit B

E-FILED
Thursday, 14 September, 2017  01:23:37 PM
Clerk, U.S. District Court, ILCD

Mathew K. Higbee (Ill. Bar No. 6319929)
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
Telephone:   (714) 617-8349
Facsimile: (714) 597-6559
mhigbee@higbeeassociates.com

*Attorney for Plaintiff, Adlife Marketing &
Communications Co., Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF ILLINOIS

## PEORIA DIVISION

| | |
|---|---|
| ADLIFE MARKETING & COMMUNICATIONS COMPANY, INC., a Rhode Island corporation, | Case No.:_____ |
| | **COMPLAINT FOR:** |
| Plaintiff, | **1. COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)** |
| v. | **2. BREACH OF CONTRACT** |
| MULTI-AD SOLUTIONS, LLC, a Delaware limited liability company; YELLOW PAGES INTEGRATED MEDIA ASSOCIATION; a Delaware Corporation; KRASDALE FOODS, INC, a Delaware corporation; ALPHA ONE MARKETING GROUP INC., a Delaware corporation; and DOES 1-100, inclusive, | **3. UNJUST ENRICHMENT** |
| | **AND DEMAND FOR JURY TRIAL** |
| Defendants. | **EQUITABLE RELIEF IS SOUGHT** |

**COMPLAINT**

1    Plaintiff, Adlife Marketing & Communications Company, Inc. ("Adlife" or

2  "Plaintiff"), complains against Defendants, Krasdale Foods, Inc. ("Krasdale"); Alpha One

3  Marketing Group, Inc. ("Alpha One"); Multi-Ad Solutions, LLC ("Multi-Ad"), Yellow

4  Pages Integrated Media Association d/b/a Local Search Association ("LSA") and DOES 1-

5  100 (collectively, "Defendants") as follows:

6

7                        **JURISDICTION AND VENUE**

8    1.    This is a civil action seeking damages and injunctive relief against Krasdale

9  and Alpha One Marketing for copyright infringement under the Copyright Act, 17 U.S.C.

10  §§ 101 *et seq.*; and against Defendant Multi-Ad and LSA for breach of contract and unjust

11  enrichment.

12    2.    This Court has subject matter jurisdiction under the United States Copyright

13  Act, 17 U.S.C. §§ 101 *et seq.*; 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §§

14  1338(a) (copyright).  The Court possesses supplemental jurisdiction over the state statutory

15  and common law claims pursuant to 28 U.S.C. §1367.

16    3.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28

17  U.S.C. § 1400(a) in that the claim arises in this Judicial District, Defendant Multi-Ad may

18  be found and transacts business in this Judicial District, and Alpha One entered, on

19  Krasdale's behalf and to Krasdale's purported benefit, into a contract with Multi-Ad that

20  forms the subject matter of this dispute in this Judicial District.  Additionally, relevant

21  agreements between Adlife and LSA and between Alpha One and LSA provide for

22  jurisdiction and acceptance of the propriety of venue in this Judicial District.  Defendants

23  are subject to the general and specific personal jurisdiction of this Court because of their

24  contacts with the State of Illinois, including the entry of contracts with jurisdiction and

25  venue clauses in this Judicial District.

26  //

27  //

28  //

Ex B

## THE PARTIES

4.     Plaintiff Adlife Marketing, Inc. is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island.

5.     On information and belief, Defendant Multi-Ad Solutions, Inc. is a limited liability corporation existing under the laws of Delaware, with its principal place of business in Peoria, Illinois.

6.     On information and belief, Defendant Yellow Pages Integrated Media Association d/b/a Local Search Association is a Delaware corporation, with its principal place of business in Troy, Michigan.  On information and belief, LSA is Multi-Ad's alter ego or successor entity through a comprehensive transaction wherein, at a minimum, LSA acquired Multi-Ad's assets.

7.     On information and belief, Defendant Krasdale Foods, Inc., is a Delaware corporation, with its principle place of business in White Plains, New York.

8.     On information and belief, Defendant Alpha One Marketing Group Inc. (aka Alpha 1) is a Delaware corporation, with its principal place of business in White Plains, New York.

9.     The true names or capacities, whether individual, corporate or otherwise, of the Defendants named herein as DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained.

## STATEMENT OF FACTS

*Adlife and the Photographs Forming the Subject Matter of This Complaint*

10.     Adlife is an advertising and marketing agency whose team of seasoned professionals has, for decades, provided elite branding services to its clientele. With its innovative marketing campaigns and its production of high quality printed pieces such as

**COMPLAINT**

Ex B

retail circulars, signage, pamphlets and more, Adlife enables its client to build a brand through compelling visual arrangements.

11.   Since 1978, Adlife has created, artistically arranged and professionally produced a library of still images of food and other grocery items.  Adlife's library now consists of approximately 30,000 photos.  The photographs are high-resolution, artistically rendered with pleasing angles and selective lighting, color-corrected and color-separated, which makes them particularly valuable as, when used together, they provide color consistency.

12.   For valuable consideration, Adlife has licensed the rights to reproduce, distribute and publicly display its copyrighted photographs, or derivative versions thereof, to other advertising agencies and retailers.

13.   Adlife is the holder of all rights, title and interests in and to said food photographs which form the subject matter of this dispute (the "Copyrighted Food Photographs").

14.   The Copyrighted Food Photographs at issue in this Complaint were timely registered with the United States Copyright Office.

*Multi-Ad, LSA, Krasdale and Alpha One Marketing*

15.   Multi-Ad is a marketing and advertising agency that helps companies manage and distribute e-commerce and marketing content.  As part of its services, Multi-Ad makes photographs it licenses available to its clients.  Pursuant to an agreement, Adlife once provided Multi-Ad with a non-exclusive right based on a subscription fee arrangement to distribute, *inter alia*, the Copyrighted Food Photographs to potential Multi-Ad clients under appropriate licensing terms.

16.   On information and belief, Multi-Ad is a sophisticated user and owner of intellectual property.  Indeed, the agreement and Multi-Ads business structure evidences that Multi-Ad is aware of the value of original photographs, and the rights therein, including copyrights.  Multi-Ad's Terms and Conditions on its website

Ex B

<https://www.multiad.com/terms.shtml> include a section titled "Restrictions on Use of Materials" that demonstrates Multi-Ad values its "copyright and other proprietary rights."

17.   LSA is a subscription service with over 1.3 million photographs, illustrations, templates, editorial content, and more.  LSA offers content from its library to subscribers to download for print, digital advertising or for numerous other purposes.

18.   LSA is a sophisticated user and owner of intellectual property.  Apart from providing subscription services for over a million items, LSA owns numerous federally registered trademarks.  On its website, LSA claims that "[a]ll content . . . is either owned by LSA or licensed from 3rd parties. Your use of these images is subject to any restrictions or conditions of the copyright owner."

19.   Krasdale is one of the premier grocery distributors in the New York Metropolitan area and provides services beyond the region.  On its website, it boasts that its warehouse services over 2,500 independent grocery locations.  Krasdale also claims to offer private-label items (with over 800 different Krasdale-branded product identifications or stock keeping units (SKUs)), including grocery, dairy, and frozen products.  Krasdale also offers merchandising and advertising services to its customers through its subsidiary, Alpha One Marketing.

20.   Krasdale is a sophisticated user and owner of intellectual property.  Apart from providing products under its Krasdale house brand, Krasdale owns numerous federally registered trademarks.  Additionally, Krasdale's sophistication with regards to basic intellectual property matters is bolstered by its in-house marketing subsidiary, Alpha One.

21.   Alpha One is a full-service merchandising and advertising firm dedicated to providing services to grocery stores.  Alpha One's website notes that it provides, *inter alia*, traditional and new media advertising initiatives and custom circulars.  Thus, Alpha One and Adlife provide competing advertising and marketing services.

22.   On information and belief, Alpha One is also a sophisticated user and owner of intellectual property.  Alpha One owns the C-town, Bravo, and Aim banners.

---

5

**COMPLAINT**

Ex B

1   Apart from owning the banners and providing services under those names, on information

2   and belief, Alpha One owns over a dozen federally registered trademarks.  Indeed, the

3   Terms of Use on the Alpha One's website < https://www.alpha1marketing.com/terms/>

4   include a section on "Copyright [sic.] Trademark, and Related Issues."  Thus, Alpha One

5   understands the basic tenets of copyright and intellectual property law and knows or should

6   know of the value of such rights and need for proper licensing before making commercial

7   use of a third party's copyrighted works.

8

9                      *Multi-Ad's Breach of its Agreement with Adlife*

10          23.     On or around June 8, 1994, Adlife partnered with Multi-Ad to make Adlife's

11   photographs available for licensing to clients and, to that end, entered into a Digital Food

12   Photography Distributor Agreement with Multi-Ad ("The Adlife-Multi-Ad Agreement").

13   Through this agreement, Adlife granted Multi-Ad the non-exclusive right to distribute

14   Adlife's photographs to Multi-Ad's clients under particular terms.  A true and correct copy

15   of the Digital Food Photography Distributor Agreement is attached as Exhibit A.

16          24.     Section 2.2 of the Adlife-Multi-Ad Agreement stated, in relevant part, that

17   Multi-Ad would provide Adlife with royalty payments of licenses granted under the

18   agreement.  Paragraph 2.2 also required Multi-Ad to purchase from Adlife "on an

19   individual basis, (4) digital photos each month, at a mutually agreed price, for placement in

20   Distributor's Ad-Builder product for purposes of promoting Developer's products."

21   Subsequent correspondence from Brian Dickerson, the Vice-President of Product

22   Development at Multi-Ad, indicates that the parties mutually agreed on a price of $100.00

23   per photograph.

24          25.     Section 2.2 of the Adlife-Multi-Ad Agreement further provided that "A late

25   payment charge of one and one-half percent (1.5%) per month shall be charged shall be

26   paid upon unpaid balances due after said thirty (30) day period."

27          26.     Section 3.3 of the Adlife-Multi-Ad Agreement notes that "all applicable

28   copyrights . . . and other intellectual property rights in the digital phots and all other items

                                                6
                                          **COMPLAINT**

                                                                                        Ex B

licensed hereunder are and shall remain in [Adlife]." The section also makes abundantly clear that "no title to, or ownership of, the digital photos or any part thereof, is hereby transferred to [Multi-Ad]."

27.     On or around September 13, 2011, the parties, via a written addendum, modified the Adlife-Multi-Ad Agreement. The amendment changed Section 2.2 Terms of Payment of the Agreement to, *inter alia*, include an additional source of royalties for Adlife. The amendment also modified the definition of Net Sales under the agreement to expand the meaning of the term. A true and correct copy of the Amendment to the Digital Food Photography Distributor Agreement is attached as Exhibit B.

28.     Despite continuing to distribute the Adlife photographs to its clients, Multi-Ad failed to provide Adlife with timely or appropriate payments under the agreement. Indeed, among other things, an accounting provided by Multi-Ad to Adlife shows that, during the entire contract period, Multi-Ad failed to make any payments for the required four images per month and related late payments.

29.     Therefore, Multi-Ad materially breached the binding Adlife-Multi-Ad Agreement by, *inter alia*, failing to make the monthly payments for the four photographs and related late payments, as required under Section 2.2 (Terms of Payment of the Agreement).

30.     Accounting statements from Multi-Ad that accompanied payments to Adlife did not specify what items were covered in the payments. Mutli-Ad refused Adlife's multiple requests for a more detailed accounting. Upon further questioning by Adlife's legal counsel in April of 2017, general counsel for Multi-Ad's successor, LSA, admitted that Multi-Ad had never made a single monthly payment for the four images.

31.     Adlife performed or substantially performed all its obligations under the Adlife-Multi-Ad Agreement, as amended, including making the Copyrighted Food Photographs available to Multi-Ad. To the extent Adlife failed to perform any obligations under the Adlife-Multi-Ad Agreement, Multi-Ad's breach excused such obligations.

Ex B

32.     As a direct and proximate cause of Multi-Ad's breach of the Adlife-Multi-Ad Agreement, as amended, Adlife has been damaged in an amount to be proved a trial, including without limitation, for unpaid royalties, the sum of the mutually agreed price per image and related late payments, and attorneys' fees.

33.     Section 8.6 of the Adlife-Multi-Ad Agreement provides that "In any action between the parties to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover expenses, including reasonable attorneys' fees."

34.     On information and belief, after a comprehensive transaction, LSA now enjoys the benefits of the contract entered into between Multi-Ad and Adlife.  Further, on information and belief, LSA is the alter ego or successor corporation to Multi-Ad.

*Alpha One's Limited License and its Failure to Comply with the Limitations*

35.     On or around February 2, 2007, Multi-Ad sold a license to Alpha One, a subsidiary of Krasdale, permitting limited use of Adlife's library of prepared food photographs.  On or around February 12, Multi-Ad executed a contract granting Alpha One a subscription based license to use Adlife's library of photographs to a single retailer ("Alpha One License").

36.     More specifically, the Alpha One License limited a Subscriber's use in various ways, including but not limited to providing that the license was solely for "RETAIL Food Source: 1," and providing that "Subscriber may not transfer or share the password or rights under this agreement to or with any other location, affiliate or third party… Subscriber does not obtain any ownership interest in the image or copyright, but rather a limited, non-exclusive, non-transferable right and license to use that image in advertising… This license is personal to Subscriber, with no right to sublicense, distribute or make available to any other person, media, or entity for any purpose. Accordingly, Subscriber agrees not to copy, reproduce, resell, re-syndicate, Incorporate images into a new product for resale on a onetime or syndicated basis or otherwise distribute any of the Multi-Ad images, ***by any means or method (other than the use of the same by Subscriber in the development of***

8

**COMPLAINT**

Ex B

1  *custom advertising materials to a single user or entity)*, and not to make the available any
2  of the same to any other person, media or entity, either during the term of this Agreement
3  or thereafter." (emphasis added)

4      37.    Therefore, to the extent that Alpha One possessed a valid license to use the
5  Copyrighted Food Photographs, it was permitted to only make a single-use of Copyrighted
6  Food Photographs and any use above and beyond said license would constitute a use
7  outside of the scope of the license.

8      38.    Despite the express limitations of the license, Alpha One and Krasdale made
9  use of Adlife's Copyrighted Food Photographs, *inter alia*, in flyers and advertising
10 materials prepared for literally hundreds of different grocery stores, a large portion of
11 which were independently owned entities, skirting their duty to obtain an enterprise license
12 and ignoring Adlife's rights, including copyrights, in the Copyrighted Food Photographs.
13 At no time did Adlife consent, authorize, or license Alpha One's and Krasdale's
14 impermissible commercial use of the Copyrighted Food Photographs.

15     39.    In doing so, Alpha One vastly exceeded the scope of any possible license it
16 had in place, thereby infringing Adlife's copyrights and causing damage to Adlife.

17     40.    As a direct and proximate cause of Alpha One's breach of the Alpha One
18 License, Adlife has been damaged in an amount to be proved a trial, including without
19 limitation, for unpaid licensing royalties and attorneys' fees.

20     41.    On March 8, 2016, Multi-Ad sent a Cancellation Verification Notice to Robert
21 T. Rapuano, the Advertising Director at Alpha One, confirming cancellation of services
22 Krasdale and Alpha One had with Multi-Ad to use their Ad-Builder database and, with that,
23 the termination of any rights Krasdale and Alpha One might have had to license and use
24 Adlife's Copyrighted Food Photographs.  Multi-Ad terminated any deal it had with
25 Krasdale and Alpha One due to their failure to make proper payments pursuant thereto.  At
26 the time of termination, Krasdale and Alpha One were specifically notified that
27 "AUTHORIZATION TO USE ANY AD-BUILDER CONTENT WILL EXPIRE UPON
28 THE CANCELLATION OF THE SERVICE (per terms and conditions signed contract).

9

**COMPLAINT**

Ex B

1    Use of any of the Ad-Builder images after the cancellation date is unlawful.".  The

2    following day, Mr. Rapuano digitally signed the Cancellation Verification notice

3    confirming that Alpha One would discontinue, and knew it was discontinuing, use of the

4    content, including Adlife's Copyrighted Food Photographs.  The notice also stated that

5    Alpha One had outstanding debts on its last five (5) invoices totaling $700.

6

7                    *Alpha One, Krasdale and Their Willful Infringing Activity*

8           42.    On information and belief, Alpha One and Krasdale are sophisticated

9    corporate entities experienced in dealing with licensing and assignment agreements,

10   including such agreements as they pertain to intellectual property rights and, specifically,

11   copyrights for grocery photography.  Thus, Alpha One and Krasdale had full knowledge of

12   the strictures of copyright law and the requirements for the appropriate acquisition of rights

13   to use such works.  Moreover, as Alpha One's website makes clear, especially the sections

14   discussing intellectual property rights, Alpha One and Krasdale had full knowledge of the

15   value ascribed to the rights, including copyrights, of photographs of meticulously prepared

16   foods, such as the Copyrighted Food Photographs.

17          43.    At all relevant times, therefore, the Defendants clearly knew of the need for

18   proper licensing of the Copyrighted Food Photographs and from whom to license rights to

19   said Copyrighted Food Photographs and, nevertheless, failed to obtain proper authorization

20   for the uses detailed herein, making their infringements of the Copyrighted Food

21   Photographs willful.

22          44.    Similarly, despite such knowledge about basic intellectual property

23   requirements and the license provision limiting the use to a "single user or entity," Alpha

24   One and Krasdale made extensive use of at least ninety five (95) Copyrighted Food

25   Photographs in over 200 stores during the period between February 2007 and March 2016,

26   thereby vastly exceeding the allowable scope of uses under the Alpha One License.  Alpha

27   One's and Krasdale's unauthorized exploitation of the Copyrighted Food Photographs

28   violated Adlife's exclusive rights to the Copyrighted Food Photographs, as secured under

                                              10
                                         **COMPLAINT**

1  the federal Copyright Act, 17 U.S.C. § 106, and constitutes wholesale and willful copyright

2  infringement.

3      45.    Even more troublingly, even after cancellation of the Alpha One License on

4  March 8, 2016, Alpha One and Krasdale have continued to distribute over 95 of Adlife's

5  photographs to over 200 stores, blatantly and willfully infringing on Adlife's copyrights in

6  the Copyrighted Food Photographs.  Defendants Alpha One's and Krasdale's unauthorized

7  use at each store after the cancellation of the license is willful and subject to statutory

8  damages.  During the Fall of 2016, Adlife became aware of this rampant infringement.

9      46.    On or around December 12, 2016, Counsel for Adlife contacted Alpha One

10  and Krasdale to inform them of their infringing use of Adlife's Copyrighted Food

11  Photographs and to request they immediately cease and desist such uses.  Alpha One and

12  Krasdale disregarded this express notification and demand, flouted repeated pleas from

13  Adlife's counsel, and have persisted in using the Copyrighted Food Photographs without

14  Adlife's permission, license, or consent.

15      47.    At all relevant times, therefore, Alpha One and Krasdale knew of the need for

16  proper licensing of the Copyrighted Food Photographs and, given the discussions between

17  counsel, Alpha One and Krasdale, knew exactly from whom to license rights to the

18  Copyrighted Food Photographs.  Nonetheless, Alpha One and Krasdale deliberately refused

19  to obtain proper authorization for the uses detailed herein, making the infringement of the

20  Copyrighted Food Photographs willful.

21      48.    Alpha One and Krasdale's use of the Copyrighted Food Photographs works is

22  commercial in nature.  Alpha One and Krasdale violated federal law by willfully infringing

23  the copyrights to the Copyrighted Food Photographs (and potentially other Adlife works)

24  by, *inter alia*, reproducing, distributing, and publicly displaying the Copyrighted Food

25  Photographs in advertising, promotional displays and other commercial materials without

26  authorization of or payment to Adlife.

27

28

11
**COMPLAINT**

Ex B

49.     Defendants' willful uses of the Copyrighted Food Photographs after the cancellation of the Alpha One License and after the date of registration constitute copyright infringement that makes Alpha One and Krasdale subject to enhanced statutory damages.

50.     Defendants' use of the Copyrighted Food Photographs for advertising and promotional purposes is irrepressibly commercial.  Said use has and continues to generate revenue for Defendants by luring clientele with high-quality food stills, thereby increasing demand for the Defendants' marketing, advertising, and distribution services.

51.     Violation of Adlife's exclusive rights under 17 U.S.C. § 106 appear to be on-going, wanton, and in willful disregard of Adlife's legal rights   Adlife has worked diligently with Alpha One and Krasdale's counsel to reach an amicable resolution regarding their infringing activity.  However, Defendants have refused to take the needed steps to remediate the damage done or provide information and documents to encourage settlement.

52.     All told, although every possible effort has been made to avoid litigation, Defendants have given Adlife no alternative but to file suit to protect its basic intellectual property rights from willful infringement by, ironically, sophisticated businesses and owners of intellectual property.

## FIRST CLAIM FOR RELIEF
### Copyright Infringement, 17 U.S.C. § 501
### (Against Alpha One and Krasdale)

53.     Adlife incorporates here by reference the allegations in paragraphs 1 through 52 above.

54.     Adlife is the owner of all rights, title, and interest in the copyrights to the Copyrighted Food Photographs, which substantially consist of material wholly original with Adlife and which are copyright subject matter under the laws of the United States. Adlife has complied in all respects with the Copyright Act and all the laws of the United States governing copyrights.

**COMPLAINT**

Ex B

55.     Adlife's Copyrighted Food Photographs have been registered or are the subject of copyright applications timely filed with the United States Copyright Office.

56.     Defendants have directly, vicariously, contributorily and/or by inducement willfully infringed Adlife's copyrights by reproducing, displaying, distributing, and utilizing the Copyrighted Food Photographs for purposes of trade in violation of 17 U.S.C. § 501 *et seq*.

57.     Defendants have willfully infringed, and unless enjoined, will continue to infringe Adlife's copyrights by knowingly reproducing, displaying, distributing, and utilizing the Photo for purposes of trade. Indeed, Adlife previously placed Defendants on notice about the illegal nature of their acts and said acts have continued unrestrained.

58.     Defendants have also knowingly induced, caused or materially contributed to the infringing conduct of third parties, and/or have obtained a direct financial benefit therefrom while possessing the right and ability to control the infringing conduct of third parties. Among other things, by reproducing, distributing, and publicly displaying the materials for hundreds of grocers to use in their advertisements, circulars, and other commercial materials.

59.     Defendants have enabled countless additional acts of infringement by third parties in the reproduction, distribution and public display of the Copyrighted Food Photographs in advertising and marketing publications by falsely representing that they possess rights to the Copyright Food Photographs and/or otherwise enabling exploitation of the Copyright Food Photographs in infringement of Adlife's copyrights thereto.  Thus, Defendants have, *inter alia*, with knowledge materially contributed to the infringement of the Copyrighted Food Photographs and had the right and ability to control said third party actions (by virtue of providing copies and assisting in the distribution of the Copyrighted Food Photographs, among other things) and derived financial benefit therefore (by, among other things, receiving remuneration for their assistance with said third party actions, increasing their sales and/or license activities and increasing their clientele for such services).

---

13

**COMPLAINT**

60.     All the Defendants' acts are and were performed without Adlife's permission, license, or consent.  To the extent that licenses were in place, Defendants impermissibly exceeded the scope of said licenses.

61.     Adlife has identified at least 14,000 instances of infringement on at least 95 images by way of unlawful reproduction and display of Adlife's photographs.  Attached as Exhibit C is a document depicting Adlife's copyrighted works and true and correct copies of examples of Alpha One and Krasdale's infringement.  On information and belief, Alpha One, and Krasdale, have further infringed in materials not yet available to Plaintiff due to the absence of discovery and Defendants' refusal to provide such information.  If and when other infringements are determined and discovered in this case, Adlife expressly reserves the right to amend the pleadings to include additional acts of infringement as needed.

62.     Defendants have willfully infringed, and unless enjoined, will continue to infringe Adlife's copyrights by knowingly reproducing, distributing, and utilizing its photographs by, among other things, virtue of Defendants' issuance of sham licenses that, among other things, encourages companies and people to infringe Adlife's copyrights.

63.     The said wrongful acts of Defendants have caused, and are causing, great injury to Adlife, which damage cannot be accurately computed, and unless this Court restrains Defendants from further commission of said acts, it will suffer irreparable injury, for all of which it is without an adequate remedy at law.  Accordingly, Adlife seeks a declaration that Defendants are infringing its copyrights and an order under 17 U.S.C. § 502 enjoining Defendants from any further infringement of its copyrights.

64.     As a result of the acts of Defendants alleged herein, Adlife has suffered and is suffering substantial damage to its business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of its rights, all of which are not yet fully ascertainable.  Further, the infringing conduct, accounting for each infringing use at each store after the cancellation of the Alpha One License, would entitle Adlife to a potential award in excess of $20,000,000.00 in statutory and actual damages for the infringed Copyrighted Food Photographs, in addition to its attorney's fees.

14

**COMPLAINT**

1
2
3
4

## SECOND CLAIM FOR RELIEF

### Breach of Contract

### (Against Multi-Ad and LSA)

*Multi-Ad's Breach of Contract*

5   65.   Adlife incorporates here by reference the allegations in paragraphs 1 through
6   64 above.

7   66.   On or around June 8, 1994, Adlife partnered with Multi-Ad to make Adlife's
8   photographs available to clients and entered into a valid and binding Adlife-Multi-Ad
9   Agreement.  Through this agreement, Adlife granted Multi-Ad the non-exclusive right to
10  distribute Adlife's photographs to Multi-Ad's's clients.

11  67.   Section 2.2 of the Adlife-Multi-Ad Agreement required Multi-Ad to pay
12  royalties, purchase of photographs from Adlife to place on Defendant's Ad-builder product,
13  and Payment under express terms, with possible charges for late payments.

14  68.   Section 3.3 of the Adlife-Multi-Ad Agreement, *inter alia*, preserved Adlife's
15  rights in the copyrighted content.

16  69.   On or around September 13, 2011, the parties, via a written addendum,
17  modified the Adlife-Multi-Ad Agreement.

18  70.   An accounting from Multi-Ad demonstrated that, during the entire contract
19  period, Multi-Ad failed to make any payments for the required four images per month and
20  related late payments.

21  71.   Therefore, Multi-Ad materially breached the binding Adlife-Multi-Ad
22  Agreement by, *inter alia*, failing to make the monthly payments for the four photographs
23  and related late payments, as required under Section 2.2 (Terms of Payment of the
24  Agreement).

25  72.   Adlife performed or substantially performed all its obligations under the
26  Adlife-Multi-Ad Agreement, as amended, including making the Copyrighted Food
27  Photographs available to Multi-Ad.  To the extent Adlife failed to perform any obligations
28  under the Adlife-Multi-Ad Agreement, Multi-Ad's breach excused such obligations.

15

**COMPLAINT**

Ex B

73.     As a direct and proximate cause of Multi-Ad's breach of the Adlife-Multi-Ad Agreement, as amended, Adlife has been damaged in an amount to be proved a trial, including without limitation, for unpaid royalties, the sum of the mutually agreed price per image and related late payments, and attorneys' fees.

74.     Section 8.6 of the Adlife-Multi-Ad Agreement provides that "In any action between the parties to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover expenses, including reasonable attorneys' fees."

75.      On information and belief, after a comprehensive transaction, LSA now enjoys the benefits of the contract entered into between Multi-Ad and Adlife.  Further, on information and belief, LSA is the alter ego or successor corporation to Multi-Ad.

**THIRD CLAIM FOR RELIEF**

**Unjust Enrichment**

**(Against Multi-Ad and LSA)**

76.     Adlife incorporates here by reference the allegations in paragraphs 1 through 75 above.

77.     Adlife conferred benefits upon Multi-Ad by satisfying its obligations under the Adlife-Multi-Ad Agreement, which allowed Multi-Ad, despite materially breaching the contract, to procure economic benefits for itself and others.

78.     Adlife reasonably expected that it would receive the royalties, payments, and late payments under Paragraph 2.2 of the Adlife-Multi-Ad Agreement.

79.     Adlife did not provide the royalties, payments, and late payments to Multi-Ad. Rather, Multi-Ad materially breached the Adlife-Multi-Ad Agreement and, nonetheless, issued a license to Alpha One, among potentially others.

80.     It would be unjust and Multi-Ad would be unjustly enriched if it were permitted to retain revenue derived from Multi-Ad's improper licensing of Adlife's Copyrighted Food Photographs.

Ex B

81.     Adlife conferred benefits upon Alpha One by satisfying its obligations under the Adlife-Multi-Ad Agreement, which allowed Multi-Ad, despite materially breaching the contract, to license Adlife's Copyrighted Food Photographs.

82.     Alpha One benefited by impermissibly exceeding the scope of the Alpha One License and, instead of limited the use of Adlife's Copyrighted Food Photographs to a single person or entity or seeking an enterprise license from Adlife, licensed such photographs to hundreds of grocery stores.

83.     Adlife reasonably expected that it would receive royalties or payments, at least as a third-party beneficiary of the Alpha One License, as Adlife owns the underlying Copyrighted Food Photographs from which Defendants benefitted with increased revenues and higher demand.

84.     Alpha One did not provide royalties or other payments to compensate for Alpha One's use of the Copyrighted Food Photographs that exceeded the scope of the Alpha One License.  On information and belief, Alpha One did not provide royalties or payments to Multi-Ad for this impermissible use, thereby depriving Adlife of downstream income from Multi-Ad for this widespread and unauthorized use of its Copyrighted Food Photographs.

85.     It would be unjust and Alpha One would be unjustly enriched if they were permitted to retain revenue derived from Multi-Ad's improper licensing of Adlife's Copyrighted Food Photographs and Alpha One's impermissible use outside the scope of the Alpha One License.

86.     On information and belief, after a comprehensive transaction, LSA now enjoys the benefits of the contract entered into between Multi-Ad and Adlife.  Further, on information and belief, LSA is the alter ego or successor corporation to Multi-Ad.  Consequentially, the unjust actions and related enrichment mentioned above would apply with equal force as to LSA.

//

//

17

**COMPLAINT**

Ex B

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1.      The Defendants, and their officers, agents, servants, employees, and representatives, and all persons in active concert or participation with them, be permanently enjoined from copying, reproducing, displaying, promoting, advertising, distributing, or selling, or any other form of dealing or transaction in, any and all Copyrighted Food Photographs of Adlife;

2.      The Court enter a seizure order directing the U.S. Marshal to seize and impound all items possessed, owned or under the control of Defendants, their officers, agents, servants, employees, representatives and attorneys, and all persons in active concert or participation with them, which infringe upon Plaintiff Adlife copyrights, including but not limited to any and all broadcasting materials, advertising materials, print media, signs, Internet web sites, domain names, computer hard drives, servers or any other media, either now known or hereafter devised, bearing any design or mark which infringe, contributorily infringe, or vicariously infringe upon Plaintiff Adlife copyrights in the Copyrighted Food Photographs as well as all business records related thereto, including, but not limited to, lists of advertisers, clients, customers, viewers, distributors, invoices, catalogs, and the like;

3.      An accounting be made for all profits, income, receipts or other benefit derived by Defendants from the unlawful reproduction, copying, display, promotion, distribution, or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringes upon Plaintiff's copyrights pursuant to 17 U.S.C. §§ 504 (a)(1) & (b);

4.      Actual damages and disgorgement of all profits derived by Defendants from their acts of copyright infringement to reimburse plaintiff for all damages suffered by it by reasons of Defendants' acts, under 17 U.S.C. §§ 504 (a)(1);

5.      Statutory damages for copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§ 504(a)(2) and (c);

**COMPLAINT**

Ex B

1       6.       Reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. § 505 or

2 otherwise available by law;

3       7.       Costs and interest pursuant to 17 U.S.C. §§ 504 (a)(1) and (b), 17 U.S.C. §

4 505, or otherwise available by law;

5       8.       The Court declare that Defendants must return to Plaintiff all economic

6 benefits rightfully belonging to Plaintiff;

7       9.       Awarding prejudgment interest to Plaintiff on all amounts owed; and

8       10.      Plaintiff be awarded any such other and further relief as the Court may deem

9 just and appropriate.

10

11

12 Dated: September 14, 2017                Respectfully submitted,

13                              **HIGHBEE & ASSOCIATES**

14

15                            By:  **/s/ Mathew K. Higbee**
                                    Mathew K. Higbee

16                                     Attorney for Plaintiff,
                                    *Adlife Marketing &*

17                                     *Communications Co., Inc.*

18

19

20

21

22

23

24

25

26

27

28

19

**COMPLAINT**

1

**DEMAND FOR JURY TRIAL**

2      Plaintiff Adlife Marketing & Communications Co., Inc. hereby demands trial by jury

3  of all issues so triable under the law.

4

5  Dated:  September 14, 2017                    Respectfully submitted,

6                                               **HIGHBEE & ASSOCIATES**

7
                                               By:  **/s/ Mathew K. Higbee**
8                                                    Mathew K. Higbee
                                                     Attorneys for Plaintiff,
9                                                    *Adlife Marketing &*
                                                     *Communications Co., Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

**COMPLAINT**

Ex B