Rayminh L. Ngo, Esq., SDNY #RN4834
Ryan E. Carreon, *Pro Hac Vice*
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6729 facsimile
rngo@higbeeassociates.com
rcarreon@higbeeassociates.com
*Counsel for Plaintiff,*
ADLIFE MARKETING & COMMUNICATIONS CO. INC.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADLIFE MARKETING & COMMUNICATIONS CO. INC., <br><br> Plaintiff, <br><br> v. <br><br> GANNETT CO., INC.; and DOES 1 through 100 inclusive. <br><br> Defendants. | Case No.: 1:20-cv-01802-VM-KNF <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS GANNETT'S FIRST COUNTERCLAIM AND TO STRIKE CERTAIN AFFIRMATIVE DEFENSES** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Tellingly, Defendant Gannett Co., Inc.'s ("Gannett") Opposition focuses primarily on misleading and unfounded *ad hominem* attacks against Plaintiff Adlife Marketing & Communications Co., Inc. ("Adlife"), most of which have little to do with the underlying merits of the Motion at issue. This dubious strategy is, no doubt, meant to deflect from Gannett's relatively weak position on the merits. Suffice it to say that these attacks are illogical[1] and material fallacies raised to distract attention from the real issues at bar in this Motion.

While Gannett cites liberally from the December 2018 settlement agreement executed between Adlife and Multi-Ad Inc. ("2018 Settlement Agreement") to argue that Gannett (who was not a party to that litigation or the subsequent settlement agreement) is released from the claims asserted by Adlife in this lawsuit, Gannett glosses over a critical caveat to the release language which completely undermines its argument. Even if the release language of the 2018 Settlement Agreement is as broad as Gannett suggests[2] the language clearly indicates that any release of claims

---

[1] Gannett spends a significant portion of its Opposition focusing on Adlife's supposed nefarious motivation in bringing this case, using pejorative terms such as "extortion" and "copyright trolling" to inaccurately describe Adlife's motivation and litigation history. Circuit courts have cautioned that "[a] court cannot, however, reasonably infer that a plaintiff lacks a legitimate motive … based solely on the plaintiff's litigation volume and case history. Where, as here, a plaintiff alleges that it is the victim of copyright infringement on a massive scale, the mere fact that it has filed a significant number of lawsuits is not a valid basis on which to impute an improper purpose. Nor is the fact that many such lawsuits settle or are dismissed at an early stage necessarily suggestive of improper intent." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1213 (D.C. Cir. 2020); s*ee also Reed v. Ezelle Investment Properties Inc.*, 2019 WL 1453480, at *3 (D.Or., 2019) ("The Ninth Circuit has made clear that 'individual cases ... deserve to be judged on their own merits and not saddled with a blanket indictment against [other] copyright litigation.'" (brackets in original, citation omitted).) Because it is irrelevant to the Motion at bar, Adlife will not address Gannett's inflammatory language further.

[2] Multi-Ad specifically stated to Adlife that it did not believe the settlement would not affect any of Adlife's "on going or future claims against other parties for copyright infringement." *See* Dkt. 45-1, Exhibit F.

1

REPLY IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE

is only operative ███████████████████████████████████

The 2018 Settlement Agreement was executed in December of 2018. As alleged in the First Amended Complaint, Adlife's copyright infringement claim against Gannett only encompasses unauthorized use of Adlife's Copyrighted Food Photographs occurring *after* the date that the 2018 Settlement Agreement was executed. *See* Dkt. #45, ¶ 39. Because the infringing conduct alleged post dates the 2018 Settlement Agreement and, as a result, outside the time frame of the release language, Gannett's First Counterclaim for Declaratory Relief as to whether Adlife's current and future claims against Gannett and its licensees are barred under the terms of Adlife's prior settlement agreement with Multi-Ad is moot and should be dismissed. *See* Dkt. #53, ¶¶33-35.

Regarding its Affirmative Defenses, Gannett tacitly admits that many of its Affirmative Defenses are redundant, if not outright legally deficient. In Opposition, Gannett lumps together many of its Affirmative Defenses demonstrating that they are, in fact, duplicative of one another. Such duplicative pleading is the antithesis of efficient and proportional litigation.

Gannett, using yet another pejorative, argues that there is "nothing dumber than a motion to strike boilerplate affirmative defenses" and that such a motion "wastes the client's money and the court's time." However, Adlife does not argue that Gannett's Affirmative Defenses are boilerplate, not does it seek to strike them based on insufficient pleading. Rather, Adlife's argument is that Gannett's Affirmative Defenses, even if properly pled, *fail on the merits*. In other words, Adlife's Motion would save time and judicial resources by eliminating those Affirmative Defenses that have no chance of success, even if perfectly pled. Adlife would be prejudiced if it had to continue to defend against frivolous defenses.

Adlife's Motion to Dismiss and to Strike should be granted.

## II. GANNETT'S FIRST COUNTERCLAIM MUST BE DISMISSED

Gannett contends that its First Counterclaim for Declaratory Relief is facial plausible because it "contains 31 paragraphs of factual allegations and [is] supported by five exhibits." Opposition p. 10. Adlife does not contest that Gannett has pled facts with the requisite particularity. Rather, Adlife contends that Gannett's First Counterclaim is moot because, whatever the proper interpretation of the release language contained in the 2018 Settlement Agreement, Adlife's claims against Gannett fall outside the time frame contemplated in the release.

Gannett relies on ▮▮▮ in the 2018 Settlement Agreement which ▮▮▮ However, ▮▮▮ must be read in the context of ▮▮▮  ▮▮▮ (emphasis added).

The 2018 Settlement Agreement was executed in December of 2018. As alleged in the First Amended Complaint, Adlife's copyright infringement claim against Gannett only encompasses unauthorized use of Adlife's Copyrighted Food Photographs occurring *after* the date that the 2018 Settlement Agreement was executed. *See* Dkt. #45, ¶ 39. Thus, ▮▮▮ are only released ▮▮▮ of December 2018.

Because the claims alleged in the First Amended Complaint fall outside the scope of the language in the 2018 Settlement Agreement, no case or controversy exists between Adlife and Gannett as to whether Adlife's current and future claims against Gannett and its licensees are barred under the terms of Adlife's December 2018 Settlement Agreement with Multi-Ad. *See* Amended Counterclaim ¶¶33-35.

REPLY IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE

And to the extent that a case or controversy *may* have previously existed, it is not rendered moot.

An adjudication of Gannett's First Counterclaim would effectively be an impermissible advisory opinion. *See Hell's Kitchen Neighborhood Ass'n v. Bloomberg*, 2007 U.S. Dist. LEXIS 81478, at *13-14 n.2; 2007 WL 3254393, at *4 n.2 (S.D.N.Y. Nov. 1, 2007) citing *Fla. Pub. Interest Research Group Citizen Lobby, Inc. v. EPA*, 386 F.3d 1070, 1086 (11th Cir. 2004) ("mootness is jurisdictional" and "any decision on the merits of a moot case would be an impermissible advisory opinion") (internal quotations omitted).

Therefore, Gannett's First Counterclaim for Declaratory Relief must be dismissed[3].

## III.   ADLIFE IS PREJUDICED BY GANNETT'S MERITLESS DEFENSES

In Opposition, Gannett asserts that Adlife has "no reasonable claim of prejudice" which is supposedly "fatal" to the instant Motion. Opposition, p. 15. However, Adlife has a more than reasonable claim that the continued inclusion of Gannett's 13 deficient Affirmative Defenses would be severely prejudicial.

First, Adlife is not requesting that a nominal amount of Affirmative Defense be stricken, rather the 13 Affirmative Defenses at issue represent nearly *two thirds* of the Affirmative Defenses alleged by Gannett in this litigation. Allowing these legally deficient Affirmative Defenses to remain would result substantial increase in the time and resources required to litigate this case despite the fact that Gannett has no chance of prevailing on the merits of these defenses.

Second, the scope and limitations of discovery would be greatly impacted. Relevance and proportionality are the hallmark of discovery. *See* Fed. R. Civ. P. 26(b)(1). If the deficient Affirmative Defenses were to remain, both parties would

---

[3] Adlife does not challenge Gannett's Second Count for Declaratory Relief arising out of the parties' disputed interpretation of Gannett's Content License Agreement with Multi-Ad.

be forced to engaged in substantial and irrelevant discovery. The disproportionately large number of deficient Affirmative Defenses would greatly impact the ability of Adlife to home in on the issues that would go to the heart of the merits.

For example, the Federal Rules set a limit of 25 written interrogatories to each party. Fed. R. Civ. Proc. 33(a)(1). From a Plaintiff's perspective, Interrogatories are commonly used to flesh out the underlying factual and legal arguments of a party's defenses. Given the 25 Interrogatory limit, allowing Gannett to continue to assert 13 legally insufficient Affirmative Defenses would force Adlife to potentially waste a significant number of its limited Interrogatories on issues that have no merit. Similarly, Adlife would be required to devote extra time and resources into drafting document requests and admissions to account for the increased number of defenses. Both parties would also and would also likely spend additional time during depositions preparing or questioning witnesses on the facts surrounding these illegitimate defenses.

Finally, the inclusion of such a substantial number of unmeritorious Affirmative Defenses would also be prejudicial in that it would increase the risk of appealable error. If the Affirmative Defenses are maintained the parties will need to address them on summary judgment or at trial. Since the Affirmative Defenses lack merit, requiring them to be litigated in front of the judge or jury would increase the risk of a legally erroneous decision being reached. If such an erroneous decision were reached, it would likely result in additional post judgment motions and appeals, all of which would substantially prolong the litigation and waste further judicial resources.

In conclusion, allowing Gannett's to maintain its legally deficient Affirmative Defenses threatens to prejudice Adlife and to require substantial expenditure of resources. As such, Adlife's Motion to Strike should be granted.

## IIII. GANNETT'S SPECIFIC AFFIRMATIVE DEFENSES LACK MERIT

### A. Claim Preclusion and Waiver.

As stated above, Adlife's claims are neither precluded nor waived, and the language of the 2018 Settlement Agreement is not applicable to any of the allegations in Adlife's First Amended Complaint. Furthermore, as Gannett tacitly recognizes, these two Affirmative Defenses are essentially redundant of one another and should be stricken on that basis.

### B. Estoppel.

Gannett contends that its Estoppel Affirmative Defense is sufficient because Gannett pleaded in its Counterclaims that Gannett supposedly relied on Adlife's alleged "bad faith" acceptance from Gannett in the Quality Food Lawsuit. However, this new argument does not square with the express language of Gannett's Estoppel defense in which Gannett alleged that,

> "Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. During that time, Adlife litigated against and settled with Multi-Ad and, as part of that settlement … dismissed the lawsuit against Multi-Ad with prejudice. Even after filing its Complaint, Adlife unreasonably, improperly, and inexcusably delayed service of the Complaint."

In other words, as originally alleged by Gannett, the acceptance of the payment in the Quality Food's Lawsuit *is not* a basis for its argument that Adlife should be estopped from asserting its claims. Indeed, even if it were, Gannett's estoppel defense is based primarily on the language of the 2018 Settlement Agreement which, as stated above, does not cover the claims asserted in Adlife's First Amended Complaint.

### C. Acquiescence and Laches.

Next, Gannett argues that its Acquiescence and Laches Affirmative Defenses should be maintained because "carve out" exceptions supposedly announced in the Supreme Court decision *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663

(2014). In *Petrella* the Supreme Court specifically held that "laches cannot be invoked to bar legal relief" for a claim brought within a statute's express limitations period, and that laches may bar "equitable relief, in extraordinary circumstances." *Id.* at 677-78. Thus, even in the narrow circumstances in which laches might apply, it specifically applies *only* to claims of equitable relief, not legal relief.

Here, Gannett attempts the thread the needle by asserting that "the Court must consider Adlife's unjustifiable delay in crafting any equitable relief;" essentially an admission that its Affirmative Defense does not apply to Adlife's claim for legal relief for copyright infringement. Regarding equitable relief, Gannett does not allege in its pleadings any "extraordinary circumstances" from which it could be reasonably inferred that laches should be applied to preclude entry of an injunction. Instead, Gannett alleges that,

> "Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint against Gannett. During that time, Adlife litigated against and settled with Multi-Ad and, as part of that settlement … dismissed the lawsuit against Multi-Ad with prejudice. Even after filing its Complaint, Adlife unreasonably, improperly, and inexcusably delayed service of the Complaint[4]."

Indeed, Gannett cannot allege an extraordinary circumstance exists here. First, Gannett expressly alleges that it was aware of an infringement issue at least early as August 2018 when Adlife sued Gannett's customer Quality Foods. Additionally, even after resolving the Quality Foods lawsuit and being sued by Adlife in February of 2020, Gannett *continued* to incorporate Adlife imagery into advertising circulars designed By Gannett for Quality Foods as late as January of this year. *See* Dkt. #45, ¶¶50-55, Exhibits G-H.

Thus, these Affirmative Defense cannot apply to Adlife's claim for legal relief for copyright infringement, and to the extent that the might apply in narrow

---

[4] This allegation is word for word identical to the allegation contained in Gannett's Estoppel Affirmative defense.

7

circumstances to Adlife's claim for equitable relief, Gannett cannot show the requisite "extraordinary circumstances" exist.

Additionally, as Gannett tacitly recognizes, these two Affirmative Defenses are essentially redundant of one another and should be stricken on that basis.

### D.   Copyright Misuse.

Contrary to Gannett's assertion, Adlife does not "concede[ that] Gannett has pled a number of factual bases supporting its ninth affirmative defense for copyright misuse." *See* Opposition, p. 19.

Gannett broadly asserts that misuse may be applied where the rights holder used the copyright in a manner that violates the public policy embodied in the grant of copyright. While Adlife agrees that in certain cases, this has formed the basis of a misuse defense, Adlife disagrees that Gannett's allegations show that Adlife has used the copyrights in this case in a manner that violates the public policy embodied in the grant of copyright.

In its Misuse Affirmative Defense, Gannett alleges that "Adlife commenced this action *with full knowledge* that the copyright infringement claims it was asserting against Gannett had been released" (emphasis in original); that Adlife allegedly dropped "dropped approximately 99% of the allegedly infringing content precluded by the release;" that "Adlife was aware of the allegedly infringing photographs for several years before filing its original Complaint;" that Adlife litigated and settled with Multi-Ad and obtained a release as part of that settlement; and that allegedly having already obtained relief in connection with its claims, Adlife sued Gannett which supposedly "violates the public policy underlying copyright law."

Assuming *arguendo* that these allegations were true, they do not "violate the public policy underlying copyright law" as that phrase is understood by courts to

have confronted the issue. Two cases to which Gannett cites in its Opposition, *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516 (9th Cir. 1997), and *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) are instructive.

In *Practice Mgmt.* the American Medical Association ("AMA") licensed a copyrighted coding system to the Health Care Financing Administration ("HCFA"). *Id.* at 517-8. The agreement granted HCFA a royalty-free, non-exclusive license to use the AMA's coding system. *Ibid.* In return, HCFA promised not to use any other coding system and also promised to use its powers as a regulatory agency to require use of the AMA's system in programs administered by its agents. *Ibid.*

A separate dispute arose between Practice Management, the largest reseller of books of the AMA's coding system, and the AMA. *Id.* at 518. Practice Management argued in its action for declaratory relief that the AMA was misusing its copyrights because the licensing agreement between HCFA and the AMA was unduly restrictive. *Ibid.* The Ninth Circuit looked closely at the licensing agreement and sided with Practice Management. *Id.* at 521. In particular, the court held that the requirement that HCFA not use competing coding systems represented an expansion of the monopoly power of the AMA's copyright. *Ibid.* The court labeled this exclusivity clause the "controlling fact." *Ibid.* (copyright misuse is implicated by "the limitation imposed by the AMA licensing agreement on HCFA's rights to decide whether or not to use other forms as well").

Similarly, the *Assessment Techs.* Court noted that when a copyright holder attempt "to use an infringement suit *to obtain property protection ... that copyright law clearly does not confer*" the conduct could rise to the level of misuse. *Assessment Techs. of WI,* 350 F.3d at 647 (7th Cir. 2003). In other words, the "public policy underlying copyright law" is only violated where the copyright holder attempts to

expand the exclusive rights granted by § 106 Copyright Act to obtain a monopoly or exclusive right *not* granted by copyright protection. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).

Here, the allegations in Gannett's Misuse Affirmative Defenses essentially amount to Gannett asserting that Adlife is a bad actor and that, according to Gannett, Adlife should not be granted relief as a matter of public policy. However these allegations do not touch upon the public policy *of copyright*, nor doe Gannett assert that Adlife has attempted to use its copyrights to enforce a right or obtain a monopoly not granted to it under granted by § 106 Copyright Act.

### E. Damages.

Finally, Gannett lumps together a number of its damages related Affirmative Defenses and merely argues in conclusory fashion that these defenses "relate[] directly to Adlife's claims for damages" and that Adlife would not be prejudiced if these defenses were included. Opposition, p. 20.

Gannett does not address the clear case law cited by Adlife that damages are not an element of a copyright infringement claim, and thus not proper subject matter for an affirmative defense. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001), *as amended* (May 15, 2001) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)); *see also* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01, at 13-6 *159 (1999) ("Notably absent from this formulation of the prima facie case is damage or any harm to [the] plaintiff resulting from the infringement."); *Interscope Records, Motown Record Co., L.P. v. Time Warner, Inc.*, 2010 U.S. Dist. LEXIS 151460, at *44-48 (C.D. Cal. June 28, 2010) (striking affirmative defense of "failure to mitigate damages" as implausible and at odds with purposes of the Copyright Act.).

Striking these Affirmative Defenses would not preclude Gannett from

presenting whatever arguments it wishes during the damages phase of this case. However, allowing these Affirmative Defenses to be included would force the parties to unnecessarily address damages issue on summary judgment or at trial during the liability phase of the case.

Additionally, as Gannett tacitly recognizes, these Affirmative Defenses are essentially redundant of each other and should be stricken on that basis.

## IV. CONCLUSION

In conclusion, Plaintiff and Counterclaim Defendant Adlife Marketing & Communication Co. Inc. respectfully requests that the Court dismiss Count I of Defendant and Counterclaim Plaintiff Gannett Co. Inc's Counterclaim for Declaratory Relief pursuant to Federal Rules of Civil Procedure 12(b)(6), and that it strikes Gannett's 2nd, 3rd, 6th through 11th, and 16th through 20th affirmative defenses pursuant to Federal Rules of Civil Procedure 12(c).

Dated: April 16, 2021                                           Respectfully submitted,

 

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.,
*Pro Hac Vice*
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
rcarreon@higbeeassociates.com
*Counsel for Plaintiff*

## PROOF OF SERVICE

I, the undersigned, say:

I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action My business address is 1504 Brookhollow Dr., Ste 112, Santa Ana, California, 92705.

On April 16, 2021, I caused to be served the foregoing documents:

**REPLY IN SUPPORT OF MOTION TO DISMISS GANNETT'S FIRST COUNTERCLAIM AND TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

X     I hereby certify that I served a copy of the above reference document by Electronic Mail via the Court's CM/ECF system to the following individuals:

Michael J Grygiel     grygielm@gtlaw.com, Alblitdock@gtlaw.com
Nina D. Boyajian     boyajiann@gtlaw.com, gtcourtalert@gtlaw.com, riveraal@gtlaw.com
Zachary C Kleinsasser     kleinsasserz@gtlaw.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on April 16, 2021, at Santa Ana, California.

*/s/ Ryan E. Carreon*
Ryan E. Carreon